[No. 13891-3-II.  Division Two.  January 31, 1994.]

PAUL WESTMORELAND, ET AL, *Appellants,* v. THE STATE OF WASHINGTON, ET AL, *Respondents.*

*Glen K. Thorsted,* for appellants.

*Christine O. Gregoire, Attorney General,* and *Janet E. Frickelton* and *Zera Holland Lowe, Assistants,* for respondents.

PETRICH, J.* — In June 1987, Paul Westmoreland was elected president of the Associated Students of South Puget Sound Community College. Skip Nichols, the losing candidate, contested Westmoreland's election by claiming that Westmoreland had broken campaign rules, promulgated by an election committee (Committee). The Committee, composed entirely of student officers, notified Westmoreland that it was conducting an inquiry and required his presence. Following the Committee's investigation, it disqualified Westmoreland for violating three campaign rules: (1) making derogatory comments about the other candidate; (2) campaigning in one spot for more than 20 minutes; and (3) campaigning within 50 feet of a voting booth. The campaign rules provided that "[i]nfringement of campaign rules will be cause for forfeiture of candidacy". The Committee also disqualified the complaining witness for the same rule vio-

---

*Judge John A. Petrich was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

lations. Pursuant to the student body bylaws, Westmoreland appealed his disqualification to Jean Ford-Andrich, the director of student programs.[1] After review and consultation with other administration officials, and after receiving advice from the Office of the Attorney General to limit her review to determining whether the disqualification process violated the student constitution and bylaws, Ford-Andrich upheld Westmoreland's disqualification.

Westmoreland and Christopher Thorkildsen, a student who had voted for Westmoreland, filed suit against the college, Kenneth J. Minnaert, the college president, Jean Ford-Andrich, the director of student programs, and the State of Washington. They sought a writ of mandamus for injunctive relief to place Westmoreland into his elected position and for damages and attorney's fees. They claimed that the college's review and approval of the Committee's disqualification of Westmoreland as the elected student body president violated their First and Fourteenth Amendment rights under the federal constitution, their related rights under the state constitution, and deprived them of their civil rights for which they sought relief under 42 U.S.C. § 1983.[2] They did not include the student association or its officers as defendants in their lawsuit. The Defendants denied that any of the Plaintiffs' rights had been violated. In addition, Jean Ford-Andrich interposed the defenses of absolute and qualified immunity.

---

[1]Article 5, section 9 of the Associated Students of South Puget Sound Community College bylaws provided:

"Any candidate or other student may contest election results by showing just cause, in writing, within five (5) school days of that date of election to the Election Committee, which shall be responsible for reaching a satisfactory resolution. Appeals of the Committee's ruling shall be made in writing within five (5) school days of that ruling to the Director of Student Programs, whose decision shall be made within five (5) school days of that appeal, and this decision shall be irreversible."

[2]They also sought relief under 42 U.S.C. § 1985 (action for conspiracy to interfere with civil rights). However, they do not appeal from the denial of their claim under this provision.

Westmoreland's and Thorkildsen's claims arise under 42 U.S.C. § 1983, which provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ..

An essential element that a plaintiff must prove in any § 1983 action is that the alleged injury resulted "under color of" state law, which is the same as state action under the Fourteenth Amendment. *Rendell-Baker v. Kohn*, 457 U.S. 830, 837-38, 73 L. Ed. 2d 418, 102 S. Ct. 2764 (1982).

The trial court denied the petition for a writ of mandamus. A second trial court ruled on the remaining issues on cross motions for summary judgment. Before ruling on the motions for summary judgment, the trial court held an evidentiary hearing on whether Westmoreland had a protectable property interest in a tuition waiver and a stipend he would have received as president, amounting to $3,812.[3] The court then granted summary judgment of dismissal in favor of all Defendants, concluding that the Plaintiffs' right to vote, to equal protection, and to due process had not been impaired, and that Westmoreland did not have a reputational liberty interest or property right protected by the due process clause. The trial court dismissed all of their § 1983 claims. The trial court concluded that the Plaintiffs had no cause of action against the Defendants because the college did not control the student association election process, and thus, the disqualification process did not amount to state action. It also ruled that neither qualified nor absolute immunity protected Ford-Andrich.

Westmoreland and Thorkildsen appeal only from the dismissal of their § 1983 claims against Ford-Andrich, and she

---

[3]There seems to be some confusion in the record as to whether the evidentiary hearing was for the purpose of resolving disputed factual issues or whether it was used as a means of eliciting evidence for the purpose of determining whether an issue of material fact exists, thus precluding a summary judgment. In view of our disposition of the appeal we need not be concerned with resolving the confusion.

cross-appeals from the trial court's denial of her claims of absolute and qualified immunity. We reverse the trial court's determination that qualified immunity did not protect Ford-Andrich and dismiss all claims against her under this doctrine.

## IMMUNITY

Ford-Andrich contended below that the court need not address the constitutional issues underlying a § 1983 claim because judicial immunity protected her.

■ The purpose of allowing the immunity defense is to protect uninhibited decisionmaking and to prevent both unfounded liability against public officials and unfounded suits. *Davis v. Scherer*, 468 U.S. 183, 195, 82 L. Ed. 2d 139, 104 S. Ct. 3012 (1984). Ford-Andrich compares her role to that of an arbitrator, who is given absolute immunity. She contends that the same rationales apply here (1) to protect the integrity of the decision-making process from reprisals, (2) to further a policy which favors resolution without resort to litigation, and (3) to protect Ford-Andrich's impartiality, independence, and freedom from undue influence.

In deciding whether judicial immunity applies, courts examine the duties of the person whose decision or action is under review. If those duties are functions normally performed by a judge, including an administrative judge, absolute immunity applies. Ford-Andrich contends that she performed the role of a quasi-judicial officer in that she served in a reviewing position of the Committee's actions. This being the equivalent of an administrative judge, Ford-Andrich contends that she was entitled to absolute immunity.

■ We disagree. While we agree that it is good policy to protect the integrity of the review process of organized student activities, we do not agree that conferring absolute immunity is appropriate. The absence of significant procedural protections, which serve to insure the impartiality of the decisionmaker, prevents application of absolute immunity to Ford-Andrich's decision.

In *Butz v. Economou*, 438 U.S. 478, 512-17, 57 L. Ed. 2d 895, 98 S. Ct. 2894 (1978), the Supreme Court extended absolute judicial immunity to federal hearings examiners:

> We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages. . . . federal administrative law requires that agency adjudication contain many of the same safeguards as are available in the judicial process. The proceedings are adversary in nature. They are conducted before a trier of fact insulated from [judicial] influence. A party is entitled to present his case by oral or documentary evidence, and the transcript of testimony and exhibits together with the pleadings constitute the exclusive record for decision. The parties are entitled to know the findings and conclusions on all of the issues of fact, law, or discretion presented on the record.
>
> There can be little doubt that the role of the modern federal hearing examiner or administrative law judge within this framework is "functionally comparable" to that of a judge.

(Citations omitted.) *Butz*, at 512-13. After listing the powers and structures of agency adjudication, the Court said:

> In light of these safeguards, we think that the risk of an unconstitutional act by one presiding at an agency hearing is clearly outweighed by the importance of preserving the independent judgment of these men and women. We therefore hold that persons subject to these restraints and performing adjudicatory functions within a federal agency are entitled to absolute immunity from damages liability for their judicial acts.

*Butz*, at 514.

■ While Ford-Andrich did perform a quasi-judicial role in reviewing the election Committee's decision, her position was not subject to any judicial procedural restraints on unconstitutional acts. Therefore, we refuse to find that absolute immunity protected her from liability for her actions.

Nonetheless, we do find that qualified immunity protected her from liability for her actions. In deciding whether qualified immunity applies to discretionary functions, courts apply a 2-part objective test: (1) was the relevant law "clearly established" at the time of the alleged violation?

and (2) if so, would a reasonably competent official have reached the same conclusion? *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982).

Ford-Andrich contends that the law regarding college campus elections was not clear at the time of Westmoreland's disqualification such as to inform a reasonable official that disqualification in the prescribed manner would violate established rights. Ford-Andrich also contends that her actions were objectively reasonable because she acted in good faith and on the advice of the Attorney General.

Westmoreland, on the other hand, contends that the law regarding due process rights, free speech, liberty in reputation, voting rights, and property rights was clearly established at the time of his disqualification. He also contends that good faith reliance on counsel's advice is not a sufficient showing of extraordinary circumstances to show why Ford-Andrich did not follow "clearly established" law. He argues that she should have known the relevant legal standard, and that she should have known that the investigation procedure violated his due process rights. Further, he argues that good faith should not be an excuse because such a rule would render due process protections illusory.

> [T]he right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

(Citations omitted.) *Anderson v. Creighton,* 483 U.S. 635, 640, 97 L. Ed. 2d 523, 107 S. Ct. 3034 (1987). *See also Malley v. Briggs,* 475 U.S. 335, 341, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"); *Mitchell v. Forsyth,* 472 U.S. 511, 528, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985) (officials are immune unless "the law clearly proscribed the actions" they took); *Gutierrez v.*

*Municipal Court of Southeast Judicial Dist.*, 838 F.2d 1031, 1048 (9th Cir. 1988) (inquiry is "whether it is clearly established that the particular act by the public official constitutes a violation of the right involved, rather than whether the right itself is clearly established"), *cert. granted, vacated and appeal dismissed*, 490 U.S. 1016, 104 L. Ed. 2d 174, 109 S. Ct. 1736 (1989).

Not only was the law at the time of Westmoreland's disqualification not "clearly established" regarding the constitutional rights of college students to engage in the process of electing student officers, but Ford-Andrich's actions, which were taken in good faith and comported with the legal advice she was given, were actions which a reasonable official would have taken under similar circumstances.

Judgment affirmed on the basis of qualified immunity.

SEINFELD, A.C.J., and ALEXANDER, J., concur.