974 P.2d 847 (1999)
William DEWEY, Appellant,
v.
TACOMA SCHOOL DISTRICT NO. 10, John and "Jane Doe" Helmlinger and Benjamin and "Jane Doe" Soria, individually and the marital communities comprised thereof, and in their official capacities as agents of the District, Respondents.
No. 22060-1-II.
Court of Appeals of Washington, Division 2.
March 5, 1999.
Publication Ordered April 9, 1999.
*849 Philip Saint John Wakefield and D. Michael Tomkins, Seattle, for Appellant.
Curman M. Sebree, Seattle, for Respondents.
*848 ARMSTRONG, J.
William Dewey was employed by the Tacoma School District No. 10 from January 1988 until September 1993, when his position was eliminated. Although he applied for another position in the District, he was not appointed to it. Dewey sued the District, claiming he was wrongfully terminated in retaliation for (1) reporting misconduct by his supervisor; and (2) threatening to report misconduct by subordinate employees. The trial judge dismissed the case after Dewey rested. On appeal, Dewey argues the trial court erred in (1) ruling that he had not adequately pled a First Amendment claim; (2) denying him leave to amend his complaint to state a First Amendment claim; and (3) finding the evidence insufficient to go to the jury. We affirm.

FACTS
Dewey began his employment with the Tacoma School District in January 1988 as Maintenance Coordinator in the Building and Grounds Department. When the Building and Grounds Department was reorganized in 1989, Dewey became manager of the Work Control Center. Dewey was employed as the Work Control Center Manager until September 1993 when the Work Control Center was eliminated.
After learning of the proposed elimination of the Work Control Center, Dewey applied for the Maintenance Manager Position. A panel interviewed Dewey on August 13, 1993, but he was not selected. On September 1, 1993, the District Superintendent wrote Dewey that his employment would terminate effective October 15, 1993, as a result of the elimination of his position and budget restrictions.
Dewey sued the District, the District Deputy Superintendent, Benjamin Soria, and his former supervisor, John Helmlinger, for wrongful termination of employment.[1] The overarching theory of Dewey's complaint is that the District terminated his employment in retaliation for (1) reporting Helmlinger's use of District employees to move household furniture during work hours; and (2) reporting Helmlinger's refusal to investigate a subordinate employee's suspected misuse of compensatory time.

A. Furniture Moving
In spring 1993, Helmlinger asked his managers to lunch at his home and to help him move furniture. Dewey and three others helped with the move, which occurred at least partly during work hours.
On August 30, 1993, Jeff Sopher, a District employee, wrote a letter to the president of the School Board reporting Helmlinger's use of District employees to move furniture at his home during the workday. Dewey had previously told Sopher about the furniture move because Dewey believed that Sopher *850 was about to lose his job. Dewey also said that Sopher could use his name to "blow the whistle on this furniture moving thing." Dewey concedes that he gave Sopher the information to protect Sopher's job.

B. Compensation Time
In early 1993, Dewey was asked to review the compensatory time balances of his four employees. Dewey reported to Helmlinger that he was having problems computing the balances. Dewey believed the balances reported to him were inaccurate and suspected his employees of misusing compensation time. Dewey testified that Helmlinger instructed him, as a supervisor, to negotiate the compensation time issue with his staff. But Dewey disagreed with this instruction, believing there was nothing to negotiate as "the figures [did] not add up." Dewey eventually reported the issue to Assistant Superintendent Ben Soria, Helmlinger's supervisor. Helmlinger testified that he contacted the state auditor when it became apparent Dewey could not resolve the discrepancies on his own.
Dewey's amended complaint alleges the following legal theories: (1) breach of employment contract; (2) wrongful discharge in violation of RCW 42.40 and RCW 42.41 (the "whistleblower" statutes); (3) misrepresentation of Dewey's job responsibilities; (4) interference with a business relationship; (5) civil conspiracy; (6) age discrimination; and (7) intentional infliction of emotional distress.
In June 1995, the District moved for summary judgment. In response, Dewey asserted two theories in support of his wrongful discharge claim: (1) retaliatory discharge in violation of the whistleblower statutes, RCW 42.40 and RCW 42.41; and (2) wrongful discharge in violation of public policy. The superior court dismissed all of Dewey's claims except those for age discrimination, retaliatory discharge, and wrongful discharge.
After further discovery, the District moved to dismiss the remaining wrongful discharge claims. In response, Dewey argued for the first time that the termination violated his First Amendment right to speak about matters of public concern. Counsel for both parties discussed the First Amendment theory during oral argument. Although Dewey asserted that the theory had been "notice pled" as a basis for wrongful discharge, the District argued the claim had not been properly pled. The court denied the motion to dismiss, but it did not address the First Amendment claim.
On the first day of trial, Dewey voluntarily dismissed his age discrimination claim. After Dewey rested his case, the District moved for a directed verdict. The court ruled that a First Amendment claim had not been properly pled and denied Dewey's motion to amend to state the claim. The court then dismissed Dewey's remaining claims.

ANALYSIS

A. First Amendment Claim
Dewey contends that he stated a First Amendment claim under the principle of "notice pleading" when he pled facts to support such a claim. Although Dewey maintains he pled a cause of action for violation of an employee's free speech rights, his amended complaint does not contain the words, "First Amendment" or "free speech." The issue thus becomes whether the necessary elements may be fairly inferred from his complaint.
Under the liberal rules of procedure, pleadings are intended to give notice to the court and the opponent of the general nature of the claim asserted. Lewis v. Bell, 45 Wash.App. 192, 197, 724 P.2d 425 (1986). Although inexpert pleading is permitted, insufficient pleading is not. Lewis, 45 Wash. App. at 197, 724 P.2d 425. "A pleading is insufficient when it does not give the opposing party fair notice of what the claim is and the ground upon which it rests." Lewis, 45 Wash.App. at 197, 724 P.2d 425 (citation omitted); Molloy v. City of Bellevue, 71 Wash.App. 382, 385, 859 P.2d 613 (1993) (complaint must apprise defendant of the nature of plaintiff's claims and legal grounds upon which claim rests). A complaint for relief should contain: "(1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand *851 for judgment for the relief to which he deems himself entitled." CR 8(a).
Under 42 U.S.C., § 1983, a public employee may state cause of action for being discharged or otherwise disciplined for exercising the right of free speech. White v. State, 131 Wash.2d 1, 10, 929 P.2d 396 (1997). But an employee's right to speak out is not absolute. In order to present a prima facie case of retaliation in employment based on the exercise of First Amendment rights, a public employee must demonstrate: (1) the speech deals with a matter of public concern; (2) the employee's free speech interest is greater than the employer's interest in promoting the efficiency of the public services provided; (3) the speech was a substantial or motivating factor in the personnel decision adverse to the employee; and (4) in the absence of the protected speech, the employer would not have made the same personnel decision. Binkley v. City of Tacoma, 114 Wash.2d 373, 382, 787 P.2d 1366 (1990); Wilson v. State, 84 Wash.App. 332, 340-41, 929 P.2d 448 (1996) (citations omitted).
In his amended complaint, Dewey alleges he had "blown the whistle" on two improper activities and that, in retaliation, the District wrongfully terminated his employment. Specifically, Dewey alleges:
Plaintiff ... reported to his superiors that Defendant HELMLINGER was using public funds and labor for personal benefit, and that possible abuses of compensation time were occurring. Plaintiff reported these acts not for his own personal gain, but because they involved the misuse of taxpayer moneys....
Thus, Dewey's amended complaint alleged his speech dealt with a matter of public concern and was a substantial or motivating factor in his discharge. But Dewey fails to articulate two elements essential to a free speech claim. First, Dewey did not allege that his free speech interest was greater than the District's interest in promoting the efficiency of its public services. Second, Dewey did not allege that the District would not have made the same personnel decision in the absence of the protected speech.[2] As all four elements must be present, Binkley, 114 Wash.2d at 382, 787 P.2d 1366, Dewey's amended complaint fails to plead a free speech violation.
The reasoning of Trask v. Butler, 123 Wash.2d 835, 872 P.2d 1080 (1994), is persuasive. The court held that to give effect to CR 8:
[A] litigant must plead more than general facts in a complaint to properly allege a CPA [Consumer Protection Act] cause of action. If no reference is required to the CPA, a litigant would not have to amend their complaint to assert a violation. If this were the rule, a litigant could simply await trial and surprise their adversary with a CPA claim so long as enough facts were intermixed in the complaint. In hindsight it is easy to view facts and agree they support a CPA claim. It is a much more difficult, if not an impossible task, to predict whether a plaintiff will raise such a claim when it is not alleged in the complaint.
Trask, 123 Wash.2d at 846, 872 P.2d 1080. A complaint must at least identify the legal theories upon which the plaintiff is seeking recovery. Molloy, 71 Wash.App. at 389, 859 P.2d 613. Dewey's amended complaint explicitly identifies seven separate causes of action. But Dewey's complaint does not identify a free speech or First Amendment theory, nor does it fairly imply such a theory. The trial court did not err in finding Dewey's complaint failed to state a First Amendment claim as a legal theory of recovery.
Dewey also argues that he cured any deficiency of the pleadings by raising the First Amendment issue before the parties argued the District's motion to dismiss. Dewey maintains the parties "tried the First Amendment claim by implication" by addressing it in oral argument. We disagree.
When issues that are not raised by the pleadings are tried by express or implied consent of the parties, they will be *852 treated in all respects as if they had been raised in the pleadings. Reichelt v. Johns-Manville Corp., 107 Wash.2d 761, 766, 733 P.2d 530 (1987) (citing CR 15(b)). In determining whether the parties impliedly tried an issue, an appellate court will consider the record as a whole, including whether the issue was mentioned before the trial and in opening arguments, the evidence on the issue admitted at the trial, and the legal and factual support for the trial court's conclusions regarding the issue. Federal Signal Corp. v. Safety Factors, Inc., 125 Wash.2d 413, 435-36, 886 P.2d 172 (1994).
In the course of responding to the District's motion to dismiss, Dewey argued for the first time that termination in violation of his right to speak about matters of public concern violated the First Amendment. The District's reply to Dewey's responsive brief did not mention his First Amendment claim. Although the parties discussed a First Amendment claim during oral argument, the District's argument that Dewey failed to plead a First Amendment theory of recovery did not amount to a "trial" of the issue. Further, in ruling on the motion to dismiss, the trial court did not discuss the First Amendment claim. Rather, the court deferred to the ruling of the previous judge and refused to dismiss the age discrimination, wrongful discharge, and retaliatory discharge claims. The parties did not try the First Amendment claim by implication.
A party who does not plead a cause of action or theory of recovery cannot finesse the issue by later inserting the theory into trial briefs and contending it was in the case all along. See Molloy, 71 Wash.App. at 385-86, 859 P.2d 613 (rejecting plaintiff's "veiled attempt" to amend his complaint by raising a theory of wrongful termination in response to defendant's summary judgment motion). The trial court did not err in ruling that the First Amendment claim was not tried by implication.

B. Denial of Motion to Amend
Dewey argues that the trial court abused its discretion in denying him leave to amend to add a First Amendment claim.
We review the trial court's denial of Dewey's oral motion to amend his amended complaint for a manifest abuse of discretion. Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, 100 Wash.2d 343, 351, 670 P.2d 240 (1983); Orwick v. Fox, 65 Wash. App. 71, 88, 828 P.2d 12 (1992). After the defense serves its answer, the plaintiff may amend his pleading only by leave of court, and "leave shall be freely given when justice so requires." CR 15(a). Dewey's motion to amend came at the last possible moment, following a summary judgment proceeding, a motion to dismiss, and after he had rested his case at trial.
Dewey cites cases emphasizing the "freely given" directive and argues that the refusal to allow amendment is an abuse of discretion because the court did not make a finding of actual prejudice.
"In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be `freely given.'"
Culpepper v. Snohomish County Dep't of Planning and Community Dev., 59 Wash. App. 166, 176, 796 P.2d 1285 (1990) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). But the parties in Culpepper and Foman brought motions to amend at an early stage, before the defense had taken the trouble to respond to the allegations in the complaint and prepare for trial. Thus, it could fairly be said that "no purpose whatsoever is served by the hypertechnical application of a rule which would have no effect other than to deny [the plaintiff] his day in court." Culpepper, 59 Wash. App. at 176, 796 P.2d 1285.
Here, in contrast, the District had previously devoted two pretrial motions to the theories pled in Dewey's complaint and had prepared for trial on the remaining theories. The District correctly argued it did not receive proper notice that the First Amendment *853 theory was an issue in the case.[3] Allowing Dewey to amend his complaint would have caused actual prejudice to the District. The District, at the last minute, would have been required to refute the elements of a First Amendment claim, requiring the additional showing that: (1) Dewey's speech was not protected; (2) the District's interest in providing efficient public services outweighed Dewey's speech interest, and (3) the District would have made the same personnel decision even in the absence of Dewey's speech. See Herron v. Tribune Publ'g Co., 108 Wash.2d 162, 168, 736 P.2d 249 (1987) (affirming denial of leave to amend and reasoning that if motion had been granted, defendants would have had to contact an entirely new set of witnesses and begun new efforts to secure evidence). As discussed above, a First Amendment claim involves different facts and evidence than the claims alleged in Dewey's amended complaint. Thus, the trial court did not abuse its discretion in denying the motion to amend.[4]

C. Directed Verdict
Finally, Dewey argues that the trial court erred by directing a defense verdict and ruling that Dewey's activities did not constitute whistleblowing activity as a matter of law.
In ruling on a motion for directed verdict, the trial court must accept the truth of the nonmoving party's evidence and draw all reasonable inferences in the light most favorable to that party. Levy v. North Am. Co. for Life and Health Ins., 90 Wash.2d 846, 851, 586 P.2d 845 (1978). The trial court may grant the motion only if no competent evidence or reasonable inference exists to sustain a verdict in favor of the nonmoving party. Lockwood v. AC & S, Inc., 109 Wash.2d 235, 243, 744 P.2d 605 (1987). If any "justifiable" evidence exists from which reasonable minds could reach a verdict in the nonmoving party's favor, the question is for the jury. Levy, 90 Wash.2d at 851, 586 P.2d 845 (citation omitted).
RCW 42.41 protects local government employee "whistleblowers" and provides remedies for reprisal or retaliation. But RCW 42.41.050 provides:
Any local government that has adopted or adopts a program for reporting alleged improper governmental actions and adjudicating retaliation resulting from such reporting shall be exempt from this chapter if the program meets the intent of this chapter.
(Emphasis added.) Because the District adopted Policy 3645,[5] which mirrors RCW 42.41, the District is exempt from RCW 42.41 and the provisions of Policy 3645 govern.
Policy 3645 requires a whistleblowing employee to "submit a written report to the supervisor or designee, stating in detail the basis for the employee's belief that an improper governmental action has occurred." This policy cautions that, "District employees who fail to make a good faith attempt to follow this policy and procedure in reporting improper governmental conduct shall not be eligible for the protections outlined."
In ruling on the District's motion for directed verdict, the trial court found, as a matter of law, that Dewey's actions did not amount to whistleblowing activity. To determine if there was competent evidence to support Dewey's whistleblowing claim, we will examine each alleged incident separately.
*854 1. Furniture Moving
The parties do not dispute that Jeff Sopher, a District employee, wrote to the District to report Helmlinger's use of employees to move furniture at his home during the workday. The record shows that Dewey informed Sopher that he was about to be terminated and authorized Sopher to use his name to "blow the whistle on this furniture moving thing." Dewey himself testified that he gave Sopher this information to protect Sopher's job.
At trial, Dewey argued, "It is clear that Mr. Sopher was an agent, Mr. Dewey allowing his name to be used and going directly to [the president of the School Board], and he was still employed at the time." In essence, Dewey maintained that Sopher acted as his agent when reporting Helmlinger's misconduct. But the trial court rejected this argument.
By all the testimony I heard that Mr. Sopher was going to lose his job, and in an effort to protect Mr. Sopher from losing his job ... Mr. Dewey tells Mr. Sopher of the furniture moving activity, and tells Mr. Sopher to write a letter to the Board so that he can protect his job. The argument of Plaintiff is that Mr. Sopher somehow has become the agent of Mr. Dewey. I find the argument without merit. This was a blatant effort, as testified to by Mr. Dewey himself, to protect some person's job who had no actual knowledge of this activity.
There is no evidence in the record to support the argument that Sopher acted as Dewey's "agent" in reporting Helmlinger's misconduct.
The trial court did not err in ruling as a matter of law that Dewey's act of informing Sopher of the furniture moving incident did not constitute whistleblowing activity.
2. Compensation Time
After encountering difficulties in computing the compensation balances of his employees, Dewey reported the problem to his supervisor, Helmlinger. Dewey believed the balances reported to him were significantly less and suspected his employees of misusing compensation time. Dewey testified that Helmlinger instructed him to negotiate the compensation time issue with his staff. But Dewey disagreed with this instruction, believing there was nothing to negotiate as the figures simply did not add up. Dewey eventually reported the compensation time issue to Soria, the Assistant Superintendent and Helmlinger's supervisor. Dewey's memo to Soria stated, in part: "I would prefer to settle this issue in house, but I am wondering if I would be better off calling the state auditor. For months my hands have been tied, and I cannot perform my duties effectively. Every direction results in hours on the telephone...." Helmlinger testified that he requested an audit when it became apparent that Dewey could not resolve the discrepancies on his own.
Dewey's own testimony establishes that his act of complaining to Soria did not constitute whistleblowing activity. Policy 3645, which protects District whistleblowers, encourages employees to disclose "improper governmental actions of local governmental officials and employees." The Policy defines "improper governmental action" as any action by a District officer or employee:
(a) That is undertaken in the performance of the officer or employee's official duties, whether or not the action is within the scope of the employee's job; and
(b) That (i) is in violation of any federal, state or local [law] or rule, (ii) is an abuse of authority; (iii) is of substantial and specific danger to the public health or safety, or (iv) is a gross waste of public funds.
The record clearly shows Dewey's frustration with his inability to successfully resolve the compensation time discrepancies. But that Dewey sought support from Helmlinger's supervisor does not constitute a report of "improper governmental action." Dewey was not reporting any violation of law or abuse of authority. And Helmlinger's failure to give Dewey the help he sought did not create a substantial and specific danger to public health or safety. Finally, there was no evidence that Helmlinger's failure to solve Dewey's problem caused a gross waste of public funds. Quite simply, Dewey merely *855 expressed dissatisfaction with Helmlinger's method of resolving a problem with Dewey's subordinate employees. The trial court did not err in ruling, as a matter of law, that the memo to Soria did not constitute whistleblowing activity.
A motion for directed verdict can be granted only if the court can say, as a matter of law, that there is no substantial evidence to support the nonmoving party's claim. Bombardi v. Pochel's Appliance & TV Co., 9 Wash.App. 797, 800, 515 P.2d 540 (1973). As the record clearly demonstrates that Dewey did not engage in whistleblowing activity, the trial court properly granted a directed verdict on Dewey's wrongful discharge claim.[6]
Affirmed.
SEINFELD, J., and BRIDGEWATER, C.J., concur.
NOTES
[1] For convenience, we refer to the respondents as "the District."
[2] Although Dewey alleges that "Defendants' pretext for Plaintiff's termination was to facilitate `budget cuts,'" Dewey does not assert that but for his exercise of free speech the District would not have eliminated his position.
[3] Although the parties addressed the First Amendment claim at oral argument, the District consistently maintained that Dewey had not properly pled the issue. Because the trial court did not address the First Amendment claim in its ruling denying the motion to dismiss, the District did not receive notice the claim was viable.
[4] Further, the District notes that the amendment was not justified by any need to respond to newly discovered evidence:

Dewey admits that the first amendment claim was based on the same facts as his original complaint and second amended complaint. Yet the motion to amend was made only after trial had been underway for two weeks, and after the District had moved for judgment as a matter of law dismissing Dewey's two remaining claims.
[5] REPORTING GOVERNMENT MISCONDUCT POLICY (adopted 12/10/92, Policies and Bylaws Tacoma School District No. 10).
[6] As we find Dewey did not engage in whistleblowing activity as a matter of law, we do not address his argument that he was wrongfully discharged in violation of public policy.