# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DENISE SMITH, a single individual, | ) | No. 74265-5-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SONITROL PACIFIC, a Washington corporation, | ) | |
| | ) | |
| Respondent. | ) | FILED: December 12, 2016 |
| | ) | |

COURT OF APPEALS DIV I STATE OF WASHINGTON FILED 2016 DEC 12 AM 9:30

LEACH, J. — Denise Smith sued her former employer, Sonitrol Pacific, alleging several causes of action related to her termination, including a claim of retaliation. The trial court dismissed her retaliation and emotional distress claims on summary judgment, and Smith proceeded to trial on her remaining claims. After an adverse jury verdict, Smith appeals the dismissal of her retaliation claim.

She now claims that Sonitrol retaliated against her for reporting sexual harassment, reporting her coworker's criminal background, and reporting her supervisors' workday alcohol consumption. Because Smith did not plead two of these theories in her complaint, we do not consider them. Sonitrol presented a legitimate reason for her termination, and Smith did not produce evidence that Sonitrol's reason was mere pretext. Thus, Smith's claim that Sonitrol fired her in retaliation for reporting her supervisors' alcohol consumption also fails. We

affirm the trial court's dismissal of Smith's retaliation claim.

## FACTS

Sonitrol installs and monitors alarm systems, including fire alarms. Sonitrol employed Smith as an operator in Everett.[1] Smith's duties as an operator required her to follow up on activated alarms and dispatch emergency services when necessary. If Sonitrol fails to respond properly to a fire alarm, it risks losing its certification to monitor fire alarms.

### Smith's Employment at Sonitrol

For several years, Smith worked as an operator. Sonitrol considered her to be a good employee and, in 2005, promoted her to shift supervisor. But in 2010, Smith began having problems at work and her performance deteriorated. She had many unexcused absences. Coworkers complained about her performance. In early 2012, Smith returned, at her request, to an operator position.

Between April and December of 2012, Smith received five written job performance warnings. She received two warnings about her attendance and three about her failure to respond to customer alarm issues or follow standard operating procedure. Smith signed all but one of the warnings, acknowledging that she "agree[d] with the Employer's Statement." Smith received the last notice

---

[1] Smith worked for Sonitrol from 1993 to 1994, but Sonitrol fired her when she failed to report for work as scheduled. The company rehired her in 1997.

on October 1, 2012. It cautioned her that another incident would result in a "2 week suspension without pay or immediate termination depending on the severity of the incident."

On January 9, 2013, Smith spoke with Human Resources (HR) Representative Mattie MacKenzie. During that conversation, Smith accused Joe Bullis, the general manager of Sonitrol's Everett branch, of consuming alcohol during the workday. Smith claims she also told MacKenzie that Michelle Evans, Smith's supervisor, consumed alcohol during the workday. MacKenzie conveyed Smith's statements about Bullis's workday drinking to Beau Bradley, the president of Sonitrol. Bradley told Bullis that any such conduct must immediately stop.

On January 15, 2013, Bradley met with Smith to discuss her complaint to HR and Smith's poor performance. During that meeting, Smith told Bradley that Jeff LaMont, a Sonitrol employee, had a criminal background. LaMont admits that he has a criminal conviction in Washington for impersonation. The record contains no evidence about the circumstances of this crime.

The same day, a fire alarm activated on Smith's console. The alarm came from Central Elementary, a public elementary school, while students were still in class. Smith did not respond to the alarm for about 17 minutes. When she did respond, she first called the school to ask if the fire department had been

dispatched. She then called the fire department. This violated Sonitrol's fire alarm policy which states, "WE DO NOT EVER CALL ANYONE BEFORE DISPATCHING THE FIRE DEPARTMENT ON FIRE ALARMS!"

When reporting the incident, as procedure required, Smith stated, "Received FIRE ALARM. Dispatched FD. Called premise[s] and spoke to Receptionist." This description made it appear as if she had followed protocol. Sonitrol did not learn of the 17-minute delay until a school representative contacted Sonitrol to learn the reason for the delay in calling the fire department. On January 22, 2013, Bullis contacted Bradley and told him about this incident. Bradley then decided to fire Smith.

## Procedural Facts

Smith sued Sonitrol, alleging discrimination, hostile work environment, retaliation, negligent infliction of emotional distress, and negligent supervision. For her retaliation claim, she alleged Sonitrol fired her for reporting alcohol consumption. Specifically, under the heading "RETALIATION," her complaint states,

> Plaintiff brought to the attention of HR the fact that several managers at this office location were consuming alcohol during the workday. She brought to the attention of HR that the consumption of alcohol was a widely tolerated practice within this office.

> Plaintiffs [sic] employment was terminated shortly after bringing these concerns to the attention of HR as well as having a personal conversation with the owner of this Sonitrol business.

-4-

In her deposition, Smith admitted that her alcohol consumption report provided the only basis for her retaliation claim.

> Q:     Ms. Smith, in your complaint you allege that you were terminated in retaliation for telling HR and Beau Bradley that managers Joe Bullis and Michelle Evans were consuming alcohol during the day; is that correct?
>
> A:     That is correct.
>
> Q:     And we have seen—we have established yesterday that in the nine months before you were terminated, you received at least five write-ups. As you sit here today, is there any other reason why you believe you were terminated, other than in retaliation for telling HR and Beau Bradley about Mr. Bullis's and Ms. Evans' alleged drinking?
>
> A:     I believe that was—that is the reason I was terminated.

Despite this testimony, in her response to Sonitrol's motion for summary judgment, she asserted for the first time that Sonitrol fired her for reporting sexual harassment and LaMont's criminal history.

According to Smith, while working at Sonitrol, she experienced sexual harassment. She claims that she complained to Evans about sexually oriented comments and jokes about her sexual orientation, including comments by Evans about her sexual orientation. Smith does not claim that she reported this sexual harassment to HR or any manager besides Evans.

The trial court dismissed Smith's retaliation claim and her negligent infliction of emotional distress claim but permitted her other claims to proceed to

trial, where a jury ruled against her. Smith appeals only the dismissal of her retaliation claim.

## STANDARD OF REVIEW

This court reviews a summary judgment decision de novo, considering the record before the trial court in the light most favorable to the nonmoving party.[2] However, "[t]he nonmoving party must set forth specific facts showing a genuine issue and cannot rest on mere allegations."[3] Summary judgment is appropriate when no genuine issue as to any material fact exists.[4]

## ANALYSIS

Smith makes two primary claims. First, she claims that the trial court read her complaint too narrowly, limiting her retaliation claim to one based solely on her alcohol consumption report. Second, she contends that she raised factual issues about this retaliation claim. We disagree.

In retaliation cases, Washington courts apply the same McDonnell Douglas[5] burden-shifting protocol used for discrimination claims.[6] This requires

---

[2] Camicia v. Howard S. Wright Constr. Co., 179 Wn.2d 684, 693, 317 P.3d 987 (2014).

[3] Baldwin v. Sisters of Providence in Wash., Inc., 112 Wn.2d 127, 132, 769 P.2d 298 (1989).

[4] CR 56(c); Camicia, 179 Wn.2d at 693.

[5] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

[6] Short v. Battle Ground Sch. Dist., 169 Wn. App. 188, 204, 279 P.3d 902 (2012).

that Smith first establish a prima facie case of retaliation by showing that she engaged in statutorily protected activity, that she suffered an adverse employment action, and that her protected activity caused Sonitrol to take the adverse action.[7] If Smith establishes a prima facie case, the burden of production shifts to Sonitrol to provide a legitimate, nonretaliatory reason for its adverse employment action.[8] If Sonitrol provides a legitimate, nonretaliatory reason for its action, the burden shifts back to Smith to show that this reason was actually a pretext for the true retaliatory purpose.[9]

Smith alleges she engaged in the following statutorily protected activities: reporting sexual harassment to management, reporting her coworker's criminal background to management, and reporting her supervisors' workday alcohol consumption to HR. Smith's claims that Sonitrol fired her because she reported sexual harassment and LaMont's criminal background fail because she raised them for the first time in her opposition to summary judgment, which did not satisfy the requirements of notice pleading. As to her remaining retaliation argument, Sonitrol had a legitimate, nonretaliatory reason to fire her, which Smith does not show was a pretext for her termination. Therefore, we affirm dismissal of her retaliation cause of action.

---

[7] Currier v. Northland Servs., Inc., 182 Wn. App. 733, 742, 332 P.3d 1006 (2014), review denied, 182 Wn.2d 1006 (2015); Short, 169 Wn. App. at 204.
[8] Short, 169 Wn. App. at 204.
[9] Short, 169 Wn. App. at 204-05.

## Scope of Retaliation Claim

Smith's complaint describes one protected activity in connection with her retaliation claim, reporting alcohol consumption. Smith first identified new allegedly protected activities in her opposition to Sonitrol's motion for summary judgment. Thus, we first consider whether the allegations in Smith's complaint allowed her to present evidence of her reports about sexual harassment and a coworker's criminal history to defeat Sonitrol's summary judgment motion.

CR 8 requires that a complaint include "(1) a short and plain statement of the claim showing that the pleader is entitled to relief and (2) a demand for judgment for the relief to which the pleader deems the pleader is entitled."[10] "It must identify the legal theories upon which the plaintiff seeks recovery."[11] A complaint that does not identify the legal theories upon which the plaintiff seeks recovery does not give the opposing party fair notice of the claims it must defend against.[12] "Insufficient pleadings are, then, prejudicial."[13] For this reason, a plaintiff cannot raise new legal theories in response to a motion for summary judgment without amending her complaint.[14]

---

[10] CR 8(a).

[11] Camp Fin., LLC, v. Brazington, 133 Wn. App. 156, 162, 135 P.3d 946 (2006).

[12] See Camp Fin., 133 Wn. App. at 162.

[13] Camp Fin., 133 Wn. App. at 162.

[14] Camp Fin., 133 Wn. App. at 162. The civil rules direct courts to grant leave to amend freely when justice so requires. CR 15(a).

The trial court properly dismissed the retaliation theories raised for the first time in Smith's summary judgment response. The court's decisions in Dewey v. Tacoma School District No. 10[15] and Kirby v. City of Tacoma[16] explain why. In Dewey, the plaintiff claimed wrongful discharge in retaliation for whistleblowing activities.[17] In response to the defendant's motion for summary judgment, Dewey asserted for the first time that his termination violated his First Amendment rights.[18] Dewey's amended complaint did not expressly allege a First Amendment claim, but the court still reviewed the complaint to see "whether the necessary elements may be fairly inferred from [the] complaint."[19] Because Dewey had failed to allege facts to support two of the essential elements of his First Amendment theory, he had failed to satisfy the requirements of notice pleading.[20]

In Kirby, the plaintiff filed a "Notice of Claim" that referenced "constitutional tort claims" but made no mention of free speech or the First Amendment.[21] He first raised his First Amendment claim in response to a defendant's summary judgment motion.[22] After noting the wide variation among constitutional tort

---

[15] 95 Wn. App. 18, 974 P.2d 847 (1999).
[16] 124 Wn. App. 454, 98 P.3d 827 (2004).
[17] Dewey, 95 Wn. App. at 22.
[18] Dewey, 95 Wn. App. at 23.
[19] Dewey, 95 Wn. App. at 23.
[20] Dewey, 95 Wn. App. at 24-25.
[21] Kirby, 124 Wn. App. at 470.
[22] Kirby, 124 Wn. App. at 469.

claims, the appellate court affirmed the dismissal of the First Amendment claim because the plaintiff had insufficiently described it in his complaint and notice.[23] The appellate court stated that defendants "should not be required to guess against which claims they will have to defend."[24]

As in Dewey and Kirby, Smith's claims that Sonitrol fired her in retaliation for reporting sexual harassment and LaMont's criminal background fail because she did not plead them. Her complaint does not expressly assert these claims, and they cannot be inferred from the facts alleged. Smith concedes that no facts in her complaint reference LaMont's criminal background or reporting his background to management.[25] And nowhere in her complaint does Smith allege a causal connection between her reports of sexual harassment and her termination. She alleges only that she "told Ms. Evans directly to stop making these types of sexually oriented comments" and "told her directly to stop physically touching her body in a sexually inappropriate manner."[26] Thus, neither

---

[23] Kirby, 124 Wn. App. at 470.

[24] Kirby, 124 Wn. App. at 470.

[25] Although we do not reach the merits of Smith's claim of retaliation for reporting a coworker's criminal background, we note that it would fail because, for this theory, she relies on Oregon law to show that her activity was statutorily protected. ORS § 659A.199(1). Smith does not explain how reporting a coworker's past crime is a statutorily protected activity in Washington.

[26] Had we concluded that Smith adequately pleaded retaliation for reporting sexual harassment, she still fails to present evidence of causation. To show a causal link, Smith must present evidence that retaliation was a substantial factor in Sonitrol's decision to fire her, requiring that the decision-maker knew about the protected activity. See Allison v. Hous. Auth. of City of

her reporting sexual harassment theory nor her reporting LaMont's criminal background theory can fairly be inferred from her complaint.

Smith asserts that the pleading standards are more flexible than Sonitrol suggests. But we find the case Smith relies on, Bryant v. Joseph Tree, Inc.,[27] distinguishable. Bryant does say that notice pleading does not require parties to state all the facts supporting their claims in their initial complaint.[28] But in Bryant the court decided an entirely different question: did a complaint lack an adequate legal and factual basis and subject counsel to CR 11 sanctions? "The purpose behind CR 11 is to deter *baseless* filings and to curb abuses of the judicial system."[29] By contrast, in this case we must decide if Smith's complaint adequately apprised Sonitrol of the retaliation claims she raised in her summary judgment response.[30] While our notice pleading standards did not require that Smith state every fact supporting her case, she needed to provide enough information to give Sonitrol adequate notice of her claims.

---

Seattle, 118 Wn.2d 79, 81, 821 P.2d 34 (1991). But Smith provides no evidence that Bradley knew Smith had asked Evans to stop her harassing behavior when he decided to fire Smith. Taken in the light most favorable to Smith, the facts do not show "a causal link between the activity and the adverse action." Short, 169 Wn. App. at 205 (citing Milligan v. Thompson, 110 Wn. App. 628, 638, 42 P.3d 418 (2002)).

[27] 119 Wn.2d 210, 222, 829 P.2d 1099 (1992).
[28] Bryant, 119 Wn.2d at 222.
[29] Bryant, 119 Wn.2d at 219.
[30] See Camp Fin., 133 Wn. App. at 162.

Smith provides no reason for the uninformative state of her complaint. Her own testimony provides the facts she now relies on. Thus, when she filed the complaint, she had the information necessary to plead all the statutorily protected activities alleged in her summary judgment response. Further, if discovery had revealed new facts supporting new theories, she should have amended her complaint. Finally, Smith admitted in her deposition that reporting drinking provided the only basis for her retaliation cause of action. In the complete absence of reference to other theories in her complaint and in light of her deposition testimony, Sonitrol could not have anticipated having to defend against these theories.

### Legitimate, Nonretaliatory, Nonpretextual Reason for Termination

Smith adequately pleaded only one theory of retaliation, termination for complaining about her supervisors' workday alcohol consumption. We assume for purposes of this opinion that Smith established a prima facie case for retaliation on this theory.[31] But we affirm dismissal of this claim because Sonitrol

---

[31] The Washington Industrial Safety and Health Act of 1973, ch. 49.17 RCW, through its retaliation statute, RCW 49.17.160, provides protections for employees who claim they were retaliated against for complaining about conduct related to workplace safety. See Cudney v. ALSCO, Inc., 172 Wn.2d 524, 531, 259 P.3d 244 (2011), overruled on other grounds by Rose v. Anderson Hay & Grain Co., 184 Wn.2d 268, 358 P.3d 1139 (2015). We note, however, that the statute requires an employee first to file a complaint with the Department of Labor and Industries, which Smith did not do.

produced evidence of a legitimate reason for her termination, which Smith does not show was pretext.

Smith's case fails because Sonitrol presented unchallenged evidence of a legitimate, nonretaliatory reason for firing her.[32] The record contains abundant evidence of Smith's unsatisfactory performance. Sonitrol provided a record of written warnings for unexcused absences, failure to respond to alarms, and customer and coworker complaints. Long before her alleged statutorily protected activity, Sonitrol warned her that the next violation could be grounds for termination. Then she committed a serious violation of Sonitrol's policy that could threaten its business. After repeated warnings, her failure to respond to the fire alarm promptly, failure to follow proper procedure, and attempt to cover up her error, gave Sonitrol a more than sufficient reason to fire her. Sonitrol satisfied its burden to produce evidence of a legitimate reason for termination.

Smith did not rebut this evidence by producing evidence that Sonitrol's proffered reason was merely pretextual. An employee can show that the employer's stated reason for the termination is pretextual by demonstrating "'(1) the company's reasons have no basis in fact; or (2) if they have a basis in fact, by showing that they were not really motivating factors; or (3) if they are factors, by showing they were jointly insufficient to motivate the adverse

_____

[32] See Short, 169 Wn. App. at 204-05.

-13-

employment decision.'"[33] Courts may properly dismiss a claim of retaliation when an employee fails to meet her burden to produce evidence showing that the employer's legitimate reasons for the adverse action were pretextual.[34]

First, considerable unchallenged evidence establishes Sonitrol's reasons. Written warnings signed by Smith show Sonitrol warned her about her performance. And computer software and e-mails with the school documented her fire alarm error. Second, Smith offered no evidence that these were not the motivating factors. She claims that other employees had missed fire alarms and had not been terminated, but Bradley testified that no employee had ever had as many violations. Finally, because missing fire alarms could lead to Sonitrol losing its license to conduct its business, termination was not a disproportionate punishment for someone with previous violations. Smith failed to meet her burden to produce evidence that Sonitrol's reason was pretext.

## CONCLUSION

We affirm dismissal of Smith's retaliation cause of action. Because Smith's claims that she was terminated for reporting sexual harassment and her

---

[33] Rice v. Offshore Sys., Inc., 167 Wn. App. 77, 89-90, 272 P.3d 865 (2012) (quoting Sellsted v. Wash. Mut. Sav. Bank, 69 Wn. App. 852, 859 n.14, 851 P.2d 716 (1993)).

[34] See Crownover v. Dep't of Transp., 165 Wn. App. 131, 148-49, 265 P.3d 971 (2011); Campbell v. State, 129 Wn. App. 10, 23, 118 P.3d 888 (2005); Renz v. Spokane Eye Clinic, P.S., 114 Wn. App. 611, 624-25, 60 P.3d 106 (2002).

coworker's criminal background were not adequately pleaded, we do not consider them.  As to her claim that she was fired in retaliation for reporting alcohol consumption, Sonitrol had a legitimate, nonpretextual reason for the termination.  We affirm.

Leach, J.

WE CONCUR:

Trickey, ACJ

Appelwick, J.