

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| GREGORY RICHMOND AND LYNNE RICHMOND, husband and wife, | ) ) ) | No. 40954-6-III |
| Appellants, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| CITY OF NEWPORT, WASHINGTON, | ) ) | |
| Respondent. | ) ) | |

LAWRENCE-BERREY, C.J. — Raw sewage flooded Gregory and Lynne

Richmonds' basement because a downhill property's sewer line was blocked. The

Richmonds sued the city of Newport (City), alleging three claims: (1) failure to enforce

a local sewer line ordinance, (2) intentional infliction of emotional distress, and

(3) violation of the Consumer Protection Act, chapter 19.86 RCW. In their response to

the City's cross motion for summary judgment, the Richmonds raised a takings clause

claim. The trial court granted summary judgment because the public duty doctrine

precluded the City from tort liability. On appeal, the Richmonds seek to revive their first

claim and argue the trial court failed to adjudicate their takings clause claim. We affirm

the trial court.

FACTS

Gregory and Lynne Richmond live in the city of Newport. In March 2024, raw sewage backed up into the Richmonds' basement. After a plumbing contractor was unable to find any obstruction within 75 feet of the Richmonds' sewer line, the Richmonds contacted the City's sewage superintendent. The superintendent stated that he assumed the Richmonds' sewer line connected to the City's main sewer line. Eventually, a different plumber cleared the blockage 220 feet down the sewer line.

One week later, raw sewage again flooded the Richmonds' basement. Upon inspection, the Richmonds discovered that their sewer line ran through a neighbor's lot rather than directly to the City's main sewer line. Mr. Richmond contacted the City the next day and was told there were ongoing problems with the City's residential sewer connections.

Soon after, an excavation of adjoining properties revealed that the line originated from the Richmonds' home, ran downhill through the neighbor's property, and connected further downhill to a sewer line from a third person's home. The line from the third home connected to the City's main sewer line. The floodings damaged many of the Richmonds' possessions and rendered 50 percent of their house unusable.

The Richmonds filed a complaint against the City. The complaint alleged three causes of action: failure to enforce a local sewer line ordinance, intentional infliction of emotional distress, and violation of the Consumer Protection Act.

The Richmonds sent multiple public records requests to the City. Two requests were for pre-1992 "permits and sign offs for certificate of occupancy, and what was required" for their home address, as well as "any testing on [their home's] sewer line and how the testing was completed and all of its finding[s]." Clerk's Papers (CP) at 129-30 (emphasis omitted). The City found no records responsive to the Richmonds' public records request.

In October 2024, the Richmonds moved for partial summary judgment. They filed an unsworn letter from an owner of a plumbing company. The owner stated that the City had no plans that showed the connecting sewer lines. He further stated that he had "reviewed the plumbing codes per request of Mr. Richmond and found that there are a staggering number of plumbing code violations concerning all three homes." CP at 42. The owner also noted that the line downhill from the Richmonds and their neighbor used Orangeburg pipe to connect to the main line. The Richmonds also filed an unsworn letter written by a plumber's apprentice. The apprentice stated that the Orangeburg pipe had "be[en] compromised," implying that this was the cause of the sewer backup. CP at 43.

The Richmonds also filed a letter written by the downhill owner, the one whose property contained the Orangeburg pipe that connected to the City's main sewer line. Relevant here, the owner stated that when his sewer line was built, Orangeburg pipe was normal "for that time period. However, Mr. Richmond's home was built in the late 1980's and Mr. Buckley's home was built in the early 1990's, and at that time Orangeburg pipe was not acceptable." CP at 39.

In their summary judgment motion, the Richmonds pointed to local regulations restricting the placement of sewer lines into a lot other than the property served by the line. The Richmonds argued that if the City had "follow[ed] codes and required inspections" then the defective sewer configuration would have been discovered before any damage occurred. CP at 24. They also argued that the City should have learned of the defective sewer line in 1990, when the third house added its line to the Richmonds' existing line. The Richmonds argued that the public duty doctrine did not apply because operating a sewage system is a proprietary function, not a governmental function.

The City responded that the Richmonds' central claim is not based on how the City operates its sewage system but on its purported failure to enforce plumbing codes during the building inspection process. This, it argued, fell squarely within its public duty doctrine affirmative defense.

4

The Richmonds replied that "the [City] has not kept any records of their inspection reports. Through FOIA[1] the defendant could not produce any records, this is not the plaintiff's issue. What the Plaintiff has shown the court is the State adopted Plumbing code and the defendant[']s adopted ordinances recognizing those codes and duties and responsibility." CP at 201.

The City filed a cross motion for summary judgment. It argued that the public duty doctrine barred the Richmonds' central claim and that the facts as alleged by the Richmonds failed to support an intentional infliction of emotional distress claim. The City characterized the Richmonds' theory of liability as negligent permitting or inspections, which they argued was precluded by the public duty doctrine.

After a hearing, the trial court granted the City's motion for summary judgment and dismissed the Richmonds' claims without prejudice. The City moved for reconsideration, requesting a dismissal with prejudice. The trial court granted the City's motion.

The Richmonds appeal to this court.

---

[1] Freedom of Information Act, 5 U.S.C. § 552.

ANALYSIS

PUBLIC DUTY DOCTRINE

The Richmonds argue that the trial court misapplied the public duty doctrine to preclude the City from incurring liability on its negligence claim.[2] We disagree.

The public duty doctrine prohibits liability for a public official's negligent conduct unless the duty breached was owed to the injured person as an individual rather than one owed to the public in general. *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988). The duty to issue building permits and conduct inspections is to protect the health and safety of the general public. *Id.* at 164-65. "Issuance of a building permit does not implicitly imply that the plans submitted are in compliance with all applicable codes. Nor do periodic building code inspections implicitly imply that the construction is in compliance with all applicable codes. Building permits and building code inspections only authorize construction to proceed; they do not guarantee that all provisions of all applicable codes have been complied with." *Id.* at 167. In short, "no duty is owed by local government to a claimant alleging negligent issuance of a building permit or negligent inspection to determine compliance with building codes." *Id.* at 168.

---

[2] The Richmonds do not argue that the trial court erred in dismissing their intentional infliction of emotional distress or their Consumer Protection Act claims.

*Taylor* squarely applies to this case. The Richmonds allege that the City was negligent in its permitting and inspection of their sewer line. Assuming that this is true, per *Taylor*, any duty breached by the City would be one owed to the public, not to the Richmonds. Further, as explained below, even if the inspections were mandatory, this does not cause the City's duty to be owed to an individual rather than the public.

The Richmonds cite *Osborn v. Mason County*, 157 Wn.2d 18, 134 P.3d 197 (2006), for the proposition that "a municipality cannot escape liability when it fails to perform mandatory inspections under its own [plumbing] code, and that failure results in identifiable harm to property owners." Appellants' Br. at 18. *Osborn* does not say this. *Osborn* addresses whether Mason County had a duty to warn the Osborns of the presence of a sex offender who raped and murdered a woman. *Id.* at 20. Plumbing codes are not mentioned at all nor are mandatory inspections. To the extent the public duty doctrine was implicated, the court held that "no public duty doctrine analysis is necessary because Mason County had no duty to warn the Osborns of [the sex offender's] presence." *Id.* at 27. It is unclear how the Richmonds arrived at their understanding of the case.[3]

---

[3] The Richmonds likely used AI for their briefing. AI is notorious for fabricating opinions and/or quotes. Here, the Richmonds cited an actual opinion, *Osborn*, for a proposition that would be convenient for them but which does not appear in the case. This pattern repeats with other cases cited by the Richmonds. AI fabrications occur by prompting a generative AI for a specific holding, and AI fabricating a result. This

The Richmonds similarly quote *Bailey v. Town of Forks*, 108 Wn.2d 262, 737 P.2d 1257 (1987), as stating: "'Where the government fails to enforce mandatory inspections after actual or constructive knowledge of the danger, the Public Duty Doctrine does not apply.'" Appellants' Am. Opening Br. at 54-55. This language does not appear in the case. *Bailey* discusses the Town of Fork's liability after a police officer failed to prevent a man he knew to be intoxicated from driving a truck, and the truck driver then striking a motorcyclist. *Id.* at 263-64. The Richmonds also quote *Phillips v. King County*, 136 Wn.2d 946, 968 P.2d 871 (1998), as stating "'Municipal immunity does not apply where specific statutory inspection duties are owed to identifiable individuals, and failure to perform such duties results in harm.'" Appellants' Am. Opening Br. at 55. This language also does not appear in the case, which discusses inverse condemnation liability against the county due to surface water inundating property. *Id.* at 950.

This court could not locate any cases standing for the proposition that mandatory inspections impose a duty on the City that would defeat the public duty doctrine. "'Where no authorities are cited in support of a proposition, the court is not required to

---

explains other cases cited by the Richmonds—*King County v. Vincent*, 167 Wn.2d 671 (2009), *Carlyle v. Dep't of Soc. & Health Servs.*, 155 Wn. App. 895, 231 P.3d 218 (2010), and *State v. Johnson*, 194 Wn.2d 704, 451 P.3d 1082 (2019)—none of which this court could locate. We expect all parties, including pro se litigants, to ensure that the cases cited be real cases that plausibly support the proposition for which they are cited.

search out authorities, but may assume that counsel, after diligent search, has found

none.'" *State v. Logan*, 102 Wn. App. 907, 911 n.1, 10 P.3d 504 (2000) (quoting

*DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962)). This

proposition applies equally when the cases cited in no way support the supposed holding.

The Richmonds argue that two exceptions to the public duty doctrine would also

apply to this case. The first exception is the failure to enforce exception. This occurs

when governmental agents responsible for enforcing statutory requirements possess

actual knowledge of a statutory violation, fail to take corrective action despite a statutory

duty to do so, and the plaintiff is within the class the statute intended to protect. *Bailey*,

108 Wn.2d at 268. This exception imposes a "limited duty of care to act reasonably

within the framework of the laws governing the municipality and the economic resources

available to it." *Id.* at 271. We note that *Taylor*, the controlling case, was decided after

*Bailey*, and *Taylor*'s holding is specific to a city's inspection and permitting function.

For these reasons, we follow *Taylor*.

The second exception is the special relationship exception. "A special relationship

triggers an actionable duty where: (1) there is direct contact or privity between the public

official and the injured plaintiff which sets the latter apart from the general public, and

(2) there are express assurances by a public official, which (3) give rise to justifiable

reliance on the part of the plaintiff." *Honcoop v. State*, 111 Wn.2d 182, 192, 759 P.2d 1188 (1988). Here, there is no evidence of express assurances by a public official to the Richmonds or justifiable reliance on any assurances by the Richmonds. Accordingly, no exception applies to the public duty doctrine in this case.

We conclude that the trial court did not err in summarily dismissing the Richmonds' negligent inspection/permitting claim against the City.

TAKINGS CLAUSE

The Richmonds argue that the trial court erred by not adjudicating their takings clause claim. We disagree.

Washington follows notice pleading rules, which require a concise statement of the claim and the relief sought. *Champagne v. Thurston County*, 163 Wn.2d 69, 84, 178 P.3d 936 (2008). Pleadings are intended to give notice to the court and the opponent of the general nature of the claim asserted. *Dewey v. Tacoma Sch. Dist. No. 10*, 95 Wn. App. 18, 23, 974 P.2d 847 (1999). Although inexpert pleading is permitted, insufficient pleading is not. *Id.* A pleading is insufficient when it does not give the opposing party fair notice of what the claim is and the grounds on which it rests. *Id.* A complaint must at least identify the legal theories on which the plaintiff is seeking recovery. *Id.* at 25. Pleadings consist of the complaint, the answer, a reply to the answer, a reply to a

10

counterclaim, an answer to a cross claim, a third party complaint, a third party answer, and a reply to a third party answer. CR 7(a). We have reviewed the Richmonds' complaint carefully and there is no hint of a takings clause claim.

The Richmonds first raised their takings clause claim in response to the City's motion for summary judgment. When issues that are not raised by the pleadings are tried by express or implied consent of the parties, they will be treated in all respects as if they had been raised in the pleadings. *Dewey*, 95 Wn. App. at 26. In determining whether the parties impliedly tried an issue, an appellate court will consider the record as a whole, including whether the issue was mentioned before the trial and in opening arguments, the evidence on the issue admitted at the trial, and the legal and factual support for the trial court's conclusions regarding the issue. *Id.* In *Dewey*, the parties did not try a First Amendment to the United States Constitution claim by implication where the claim was raised for the first time in response to a motion to dismiss. *Id.*

Here, like *Dewey*, the Richmonds first raised their takings clause claim in response to a dispositive motion. The City did not acknowledge the new claim, much less impliedly consent to it being raised. We conclude that the Richmonds were precluded from raising their untimely claim below and on appeal.

No. 40954-6-III
*Richmond v. City of Newport*


Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:


_____          _____
Murphy, J.                                Hill, J.