IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DION BLACKBURN, | ) | |
| | ) | No. 39012-8-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | UNPUBLISHED OPINION |
| DEPARTMENT OF SOCIAL AND | ) | |
| HEALTH SERVICES, OFFICE OF | ) | |
| ADMINISTRATIVE HEARINGS, and | ) | |
| CORPORATE JOHN DOES 1-10, | ) | |
| | ) | |
| Respondents. | ) | |

FEARING, J. — Dion Blackburn sues two Washington State subdivisions, the Office of Administrative Hearings (OAH) and the Department of Social and Health Services (DSHS). DSHS prosecuted, before the OAH, a demand that Dion Blackburn pay child support to Brad Blackburn, her ex-husband, with whom the couple's two children primarily resided. We refer to the two by their respective first names to avoid confusion. After two administrative law judges (ALJ) respectively entered consecutive orders imposing a child support obligation, Dion brought this separate suit, in Thurston County Superior Court. The suit alleges both government entities violated the Americans with Disabilities Act (ADA) and denied her due process during the course of the OAH

administrative proceeding. She appended a claim against DSHS for a purported violation

of the Public Records Act, (PRA) chapter 42.56 RCW.

The superior court granted both OAH and DSHS summary dismissal of all of Dion

Blackburn's causes of action based on the defenses of sovereign immunity, quasi-judicial

immunity, res judicata, and ripeness. On appeal, we grant sovereign immunity to both

state subdivisions for the due process claim, but deny it for other claims. We affirm the

dismissal of the suit against OAH under the ADA on the basis of quasi-judicial

immunity. We affirm the dismissal of the claim under the ADA against DSHS on the

basis of res judicata. We affirm the dismissal of the PRA cause of action, but remand to

the superior court to dismiss this cause of action without prejudice rather than with

prejudice.

FACTS

Because Dion Blackburn appeals the summary judgment dismissal of her suit, we

recite the facts in the light most favorable to Dion. We observe that the parties

emphasized, in briefs and arguments made in support of and in opposition to the

summary judgment motion, the allegations of Dion, rather than the underlying facts.

Thus, the summary judgment motions of OAH and DSHS paralleled a motion to dismiss

under CR 12(b)(6). Therefore, we often highlight the allegations in Dion's complaint.

Dion and Brad Blackburn maintained a committed relationship for many years,

married in 2003, and divorced in 2006. The couple begat two children, a son born in

2000 and a daughter born in 2005. Dion initially functioned as the custodial parent of the two children. Dion entered a relationship with another man, which relationship turned abusive. Brad obtained a court order transferring primary residential placement of both children to him. The court order imposed no obligation for child support on Dion. Dion thereafter sought to return placement of the children to her.

Dion Blackburn, born in 1980, obtained a Bachelor's Degree in criminal justice. She previously worked in insurance and as a dental office manager. Beginning in 2013, she worked for the Washington State Department of Labor & Industries (DLI) as a claims adjustor, in which position she earned a salary of $2,855 per month. Brad left school after his junior year in high school. By 2016, he earned a net monthly income of $3,602 as a delivery truck driver.

In September 2015, licensed therapist Jennifer Reza, who offices in San Clemente, California, diagnosed Dion Blackburn with generalized anxiety disorder, posttraumatic stress disorder, and alcohol use disorder. On September 1, 2015, Reza admitted Dion to ninety-day intensive outpatient treatment because of severe functional impairment. Dion then went on medical leave from her employment with DLI. Dion returned to work at DLI in January 2016.

In January 2016, Brad Blackburn requested assistance from the DSHS Division of Child Support (DCS) to garner child support from Dion, his ex-wife. DCS holds statutory authority to establish child support amounts and to enforce payment of amounts

when no court order addresses support. In February 2016, DCS commenced an administrative proceeding to determine the amount of child support Dion should pay Brad. Dion objected to the amount administratively established by DCS and requested a hearing. Under RCW 74.20A.055(4), either the payee parent or payor parent may seek a hearing if either party objects to a finding of financial responsibility. The proceeding is adversarial in nature.

In March 2016, Dion Blackburn withdrew from active duties with DLI and began to receive $1700 monthly long-term disability payments. In early March 2016, Licensed Clinical Social Worker Diane Potratz, in Medford, Oregon, admitted Dion to a residential treatment facility because of extreme anxiety, sleep disturbance, and posttraumatic stress disorder.

DCS scheduled a hearing, on Dion Blackburn's challenge to DCS's administrative assessment of child support, for March 18, 2016 before OAH, a State of Washington subdivision separate from DSHS. Dion failed to appear at the hearing, and OAH entered a default order against her.

Around April 12, 2016, Dion Blackburn sent OAH a letter from a healthcare provider stating that she was undergoing treatment in a residential treatment facility. The letter attached a March 11, 2016, statement from social worker Diane Potratz that verified Dion had been in a facility. On April 12, Dion filed with OAH a petition to vacate the default order. OAH scheduled a hearing on the petition for April 27. Dion also failed to

4

appear at the April 27 hearing. On May 24, 2016, the Department of Labor & Industries

terminated the employment of Dion.

Dion Blackburn asked again for a new hearing date, which request OAH granted.

On June 10, 2016, an OAH Administrative Law Judge (ALJ) conducted a child support

hearing. Blackburn testified that DLI terminated her employment after having been

placed on long-term disability. At the hearing, Dion asked:

> MS. BLACKBURN: Um, would it be appropriate for me to submit
> the documentation that I do have from my providers to you, Your Honor, so
> that you can kind of see . . . where I'm at with my—my medical situation,
> and get a better picture of that. You can see that it's not willfully that I
> don't want to work. I mean, I'm in the middle of a custody battle. Who
> wouldn't want to work? That—that contradicts the other, you know?
> JUDGE STUDT: . . . I don't necessarily need them. If you have a
> burning desire to send them in, I can leave the record open, but frankly, I
> don't know that I need them to make a decision at this time.

Clerk's Papers (CP) at 66.

On June 17, 2016, a week following the OAH hearing, Dion Blackburn signed and

delivered to DSHS a medical release permitting DSHS access to her records with Terilee

Wingate, a psychologist in Olympia, pertaining to her history of mental health treatment.

On June 22, Dion contacted DSHS and informed it that she was approved for a General

Assistance Unit (GAU) grant. On June 23, DSHS noted that Dion had been approved for

the Housing and Essential Needs (HEN) program.

On June 23, according to Dion Blackburn, DSHS claims manager Shawn Shaha

informed Dion that DSHS staff would forward OAH or the ALJ her medical records on

5

file with DSHS so that the ALJ could supplement his findings. DSHS does not confirm

that this conversation transpired. In her complaint, Dion complains that DSHS did not

forward the records to the ALJ before the June 10 hearing. We assume the accuracy of

this part of the complaint since DSHS could not forward, by June 10, records it did not

receive until June 23. Dion does not state whether she believes DSHS failed to forward

the medical records to the ALJ after June 23.

On June 30, 2016, the OAH ALJ issued an order establishing Dion Blackburn's

child support obligation. The ALJ found good cause excusing Dion's failure to appear at

two earlier hearings due to treatment of her medical condition, and the ALJ vacated

default orders entered pursuant to those two failures to appear.

In the June 30 order, the ALJ concluded that Dion Blackburn was voluntarily

unemployed and imputed her income at $2,182.00 per month. The order described Dion

as being in "good health." CP at 53. The ALJ imposed an obligation to pay $585 per

month with $3,396.75 in arrears beginning with January 2016. The ALJ's order did not

disclose whether he reviewed any medical or counseling records of Dion. The order did

not explain why the ALJ concluded Dion was voluntarily unemployed.

On August 4, 2016, Dion Blackburn contacted DSHS requesting assistance

appealing the child support order. DSHS referred Dion to legal aid and informed her that

she could modify her child support order since she had begun receiving a GAU grant. On

August 9, Dion complained to DCS that it should have forwarded to the ALJ the records

showing her approval for HEN payments. DCS responded that it did not represent Dion

and she could have forwarded the records directly to OAH or requested additional time to

submit records.

On August 30, 2016, Dion Blackburn appealed the June 2016 order to the

Thurston County Superior Court. She asked that child support be terminated because of

her inability to work. She also asserted that the proceedings violated her rights under the

ADA. The appeal was dismissed as untimely because she did not file her petition for

review within thirty days of the ALJ's order.

On January 1, 2018, OAH regulation WAC 10-24-010 became effective. The

lengthy regulation addresses accommodations under the ADA. WAC 10-24-010(3)

declares:

> If, during any stage of an adjudicative proceeding, the administrative
> law judge or any party has a reasonable belief that an otherwise
> unrepresented party may be unable to meaningfully participate in the
> adjudicative proceeding because of a disability, with that party's consent
> the administrative law judge shall refer the party to the agency ADA
> coordinator and delay commencing or resuming the adjudicative
> proceeding until the accommodation request is addressed by the ADA
> coordinator.

On June 4, 2018, Dion Blackburn filed a petition with DCS to modify and reduce

her monthly child support payment to $10. The petition indicated she was unable to

work, although she provided no documentation of this inability. Dion complained that,

despite being told that DCS would forward medical records to the ALJ at the time of the 2016 proceeding, DCS failed to do so.

On June 8, 2018, Dion Blackburn tendered a PRA request to DSHS that requested records that concerned herself. She desired the records to assist in an attempt to modify her child support obligation. DSHS responded to the request on June 13 and estimated it would produce the records on August 13.

On June 11, 2018, Dion Blackburn requested from OAH, as an accommodation, that her child support modification hearing occur in person, that she receive additional notices and flexible time restraints, and that she receive reminder calls. She did not request the appointment of an attorney or ADA coordinator. OAH granted the request for in-person hearing and additional notices, but denied the request for a reminder call. OAH scheduled a hearing on the modification petition for July 30, 2018. OAH also offered additional time, during which to file paperwork.

On July 27, 2018, Dion Blackburn requested postponement of the July 30 hearing on three grounds. First, the Department of Licensing had suspended her driver's license because of her failure to pay child support. She worried she lacked transportation to the hearing. Second, she needed time to process her PRA request. Third, her "anxiety [was] through the roof." CP at 97. Dion clarified that she did not seek an in-person hearing as an accommodation for her disability but rather because of difficulties with DCS and OAH. OAH granted a continuance and rescheduled the hearing for September 17. The

8

ALJ granting the continuance advised Dion that she should be able to document her current condition through medical records.

On August 8, 2018, DCS mailed 437 pages of records contained on a computer disk to Dion Blackburn. The production included some redactions based on claimed exemptions. DSHS wrote that the production fulfilled the June 8 request.

On September 17, 2018, an OAH ALJ conducted a hearing on Dion Blackburn's petition to reduce child support payments. During the hearing, Dion testified that she suffered a temporary disability related to anxiety that prevented her from working fulltime. She submitted no records supporting her having any physical or mental limitations. Dion also testified that she cannot work because of tort claims she filed against the State. She needed a flexible schedule to attend court hearings. If she did not face court hearings, she could have begun to prepare to return to work.

The OAH ALJ imputed $1,695.99 as monthly net income to Dion Blackburn, which figure reflected minimum wage. As of the date of the hearing, Brad earned $4,459.22 net income per month. On October 4, 2018, the ALJ entered a new final order adjusting Dion's child support obligation to $470.00 per month. In a conclusion of law, the ALJ wrote:

> While Ms. Blackburn contends that she is temporarily disabled, she has provided no current medical documentation that supports her position after having ample time to do so.

CP at 300. Dion never appealed the 2018 child support order to the superior court.

9

Dion Blackburn sent a second public records request to DSHS on January 11, 2019. Dion requested "all client records held by the DSHS programs marked in Section B" on DSHS' standard records request form. CP at 100. Dion checked all DSHS programs and divisions listed in Section B, which included, but was not limited to, DCS, community services division (CSD) public assistance, and state mental health institutions. Next to "Other" in Section B of the DSHS request form, Dion wrote: "All recorded conversations on the ICMS [Incapacity Case Management System]." CP at 19.

On January 23, 2019, DSHS responded to Dion Blackburn's January 11 request:

> You ask for all recorded conversations on the ICMS System. You requested records from all DSHS programs, however, I am interpreting your request to be for records maintained by the Community Services Division (CSD). Please let me know if I have misinterpreted your request. I am providing you a copy of all your ICMS notes and phone recordings available. The five pages of available responsive records and 12 phone recording I found are enclosed. They are being provided to you on a CD with no redactions and at no charge. Please let me know if you need the ICMS notes in paper form.

CP at 102. DSHS intended the letter to serve as its complete response to the January 11 demand for records.

According to DSHS, on July 2, 2019, Dion Blackburn e-mailed a third public records request, this time to Western State Hospital:

> I would like an in person review and hard copies as previously request [sic] in January 2019 of all DSHS DCS records in my case and files.
> I would like to know every party my information has been requested from and or shared with by your agency.

10

I have received a CD sometime ago however information sought was not found to be on this CD.

I need specifically all communication with DCS from June 01/2016-August 31st 2019 all means all, all hand note all logs of communications phone calls emails external and internal communications.

CP at 343. We do not know why Dion sent the request to Western State Hospital. We do not know if Western State Hospital treated Dion. Dion denies that she sent any request to the hospital.

On August 23, 2019, DSHS mailed to Dion Blackburn its initial load of documents consisting of 302 pages covering the July 2 request sent to Western State Hospital. DSHS estimated it would provide the next trove of records within thirty days.

On August 30, 2019, as DSHS prepared its response to Dion Blackburn's third public records request, Dion telephoned Marla Randall, a DSHS public records officer, about the third request. In addition to discussing the recent request, Dion stated that DSHS had misconstrued her second request as being limited to CSD records. As a result of the conversation, DSHS reopened its response to Dion's second public records request dated January 11, 2019. On October 3, DSHS sent additional records in response to the third request.

DSHS, having concluded that Dion Blackburn sought more records under her January 11 request, began providing, in installments, more records responsive to the January 11 request. On November 4, 2019, DSHS mailed a letter informing Dion that the next installment of records responsive to the January 11 request would take

11

approximately thirty business days to prepare. The final letter in the record responsive to

the January 11 request was mailed on August 26, 2020, and states that a future

installment of responsive records was being prepared.

PROCEDURE

On September 5, 2019, Dion Blackburn commenced this suit against DSHS and

OAH. On December 4, 2019, Dion filed an amended complaint. The amended

complaint summarizes the facts, in part, as follows:

> 6. During a hearings [sic] before the OAH involving the Department
> of Social and Health Services: Division of Child Support, Ms. Blackburn
> sought *accommodations pursuant to the Americans with Disabilities Act
> (hereinafter, the "ADA");* as a result of diagnoses, some of which were
> performed by the Department of Social and Health Services (hereinafter,
> the "Department"); while some missed hearings were vacated on the basis
> of disability, ultimately Ms. Blackburn's inability to produce the records
> resulted in a negative outcome in two Final Orders from the OAH. In
> between the First and Second Order, *New Rules came out with regards to
> how the OAH and Administrative Law Judges should handle cases with
> disabled individuals*; however, none of the new rules were applied in the
> second hearing, which led to the Second Final Order. *As a result of the
> failure to follow those rules, Dion Blackburn was substantially deprived of
> her rights under the rules and her constitutional due process rights.*

CP at 14-15 (emphasis added). The complaint does not identify the date of the hearings

for which Dion had sought accommodations. The complaint also does not identify the

accommodations requested.

In paragraph 27 of her amended complaint, Dion Blackburn alleged:

> The severity of the disorders claimed by Dion Blackburn may have
> required assistance in procuring and providing the necessary documentation

12

[of her disability], though the documentation was provided to the OAH and to the Department, and was available to the Department's Division of Child Support well before the hearing.

CP at 18.

Dion Blackburn labeled the first cause of action in her amended complaint as

negligence:

> *COUNT 1—NEGLIGENCE*
> 43.  Plaintiff incorporates by reference the preceding and following paragraphs and allegations as though the same were fully set forth herein.
> 44.  Defendants breached their duty of care to the plaintiff by failing to comply with applicable state law related to the duties of counsel to provide evidence to a tribunal and *the duty to provide reasonable accommodations under WAC 10-24-010*.
> 45.  As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be proven at trial.
> 46.  Prior to both Final Orders, the Department had record of Dion Blackburn's mental health or medical condition; however, counsel for the Department's Division of Child Support, which had access to the records, failed to disclose those documents to the tribunal in both of the pertinent hearings. . . .
> 47.  Though Rules were in effect relating to the provision of accommodations to disabled persons in a hearing before the OAH in the second hearing held on September 17, 2018, and the previous hearing accepted testimony related to the disability, *no reasonable accommodation was provided to Dion Blackburn*, and the Administrative Law Judge failed to enter any Finding of Fact or Conclusion of Law to provide a basis for denying an accommodation, although aware that Dion Blackburn claimed to have a disability.

CP at 21 (emphasis added).

Dion Blackburn also pled a cause of action against both OAH and DSHS for

violation of due process for failure to refer Dion to an ADA coordinator or to provide

13

Dion assistance of counsel despite DCS and OAH knowing that Dion suffered from a disability that prevented her from meaningful participation in the OAH proceedings. Finally, Dion alleged that DSHS breached the covenant of good faith and fair dealing and violated the PRA.

OAH moved for summary judgment dismissal of Dion Blackburn's entire complaint. OAH relied solely on quasi-judicial immunity as a ground for dismissal. OAH conceded, for purposes of the motion, all facts pled in the complaint.

DSHS initially moved for summary judgment dismissal of all but Dion Blackburn's PRA claim. DSHS assumed that Dion sued for failure to reasonably accommodate her under the ADA and negligent failure to forward evidence of her disability to OAH. DSHS asked for dismissal of the reasonable accommodations claim based on res judicata and the statute of limitations. It asked for dismissal of the negligence claim on res judicata. Finally, DSHS asked for dismissal of the breach of the duty of good faith on the merits. In its briefing, DSHS construed Dion's first cause of action in its complaint as one under the ADA.

In a written response to both summary judgment motions, Dion Blackburn requested, in part, that the court allow additional discovery and leave to amend her complaint. OAH and DSHS objected to a continuance.

On September 4, 2020, the superior court granted Dion Blackburn a continuance of the summary judgment motions. Counsel for the first time appeared at the hearing, on

14

behalf of Dion, although only for the limited purpose of arguing against the summary judgment motions. The trial court granted Dion a continuance of the summary judgment hearing for three months and rescheduled the hearing for December 11, 2020. Dion thereafter continued to prepare her pleadings pro se.

Despite asking for a continuance of OAH's summary judgment motion hearing, Dion Blackburn filed a brief that, in part, argued that OAH was not entitled to quasi-judicial immunity on an ADA claim. In a reply brief in support of its summary judgment motion, OAH argued that Dion did not assert a claim under the ADA. In a second reply brief, OAH noted that DSHS construed Dion's complaint as asserting the ADA. OAH argued that it was entitled to sovereign immunity under the ADA. It also argued sovereign immunity required dismissal of Dion's due process cause of action.

On September 17, 2020, DSHS moved for summary judgment also on Dion Blackburn's PRA cause of action and scheduled a hearing on its motion for October 16, 2020. DSHS argued that Dion's PRA claim was premature because DSHS continued to respond to requests. On October 16, the superior court also postponed the hearing date for this motion until December 11.

On December 11, 2020, Dion Blackburn filed another motion to continue the summary judgment motions hearing for additional discovery and another motion to amend her complaint. The written motion to amend did not identify the nature of the amendment other than to indicate she needed to match her complaint with the evidence.

The written motion also expressed a wish to "add [an] additional cause of action that would otherwise be barred." CP at 556. She did not name the additional cause of action. Dion, however, filed a proposed second amended complaint that included causes of action under the ADA and the Washington law against discrimination (WLAD).

At the December 11, 2020 hearing, the superior court denied Dion Blackburn's motion to continue the summary judgment motions. The court noted that Dion had identified certain facts materially relevant to the outcome of the case but had not offered an explanation for why the discovery had not taken place sooner. The superior court also denied the motion to amend the complaint as untimely, as being futile, and as prejudicial to DSHS and OAH.

The superior court granted summary judgment dismissal of all of Dion Blackburn's claims against both defendants. In its oral ruling, the court commented that he adopted OAH's and DSHS' arguments regarding quasi-judicial immunity, res judicata, and statute of limitations. The superior court did not resolve whether Dion had asserted a cause of action under the ADA in her first amended complaint.

LAW AND ANALYSIS

On appeal, Dion Blackburn assigns error to the denial of her motion to amend her complaint a second time, denial of her motion for postponement of the summary judgment hearing for purposes of conducting discovery, and granting of the summary judgment motions on her causes of action for negligence, violation of due process, and

16

violation of the PRA. In so arguing, she asserts that she also pled a cause of action for violations of the ADA that she subsumed in her action for negligence. Dion assigns no error to dismissal of her claim for breach of the covenant of good faith and fair dealing.

OAH and DSHS, as part of their respective summary judgment motions, did not ask the superior court to address the merits of any of Dion Blackburn's claims, and the court did not do so. Dion addresses the merits of her due process cause of action in her opening brief and OAH addresses the claim in its brief. OAH also contends in its brief that Dion's ADA claim fails on the merits. We decline to address the merits of any of Dion's causes of action because of lack of development of the claims before the superior court and because we dismiss the claims based on affirmative defenses. *Plein v. Lackey*, 149 Wn.2d 214, 222, 67 P.3d 1061 (2003).

Americans with Disabilities Act Pleading

On appeal, Dion Blackburn maintains that she asserted a claim under the ADA in that section of her amended complaint that also alleged negligence. OAH and DSHS do not take a position to the contrary, but do not concede this point. A claim under the ADA impacts the defense of sovereign immunity. Therefore, we discuss whether the complaint asserted a cause of action under the ADA.

A pleading in a civil suit must contain (1) a short and plain statement showing that the pleader is entitled to relief and (2) a demand for judgment for the relief claimed. CR 8(a). As a notice pleading state, Washington requires only a simple, concise

statement of a claim for relief. *Pacific Northwest Shooting Park Association. v. City of Sequim*, 158 Wn.2d 342, 352, 144 P.3d 276 (2006). This liberal standard permits pleadings that give notice to the court and opposing parties of the general nature of the claim asserted. *Dewey v. Tacoma School District No. 10*, 95 Wn. App. 18, 23, 974 P.2d 847 (1999).

Inexpert pleadings may survive summary judgment, but insufficient pleadings cannot. *Pacific Northwest Shooting Park Association v. City of Sequim*, 158 Wn.2d 342, 352 (2006). A pleading is insufficient when it does not give the opposing party fair notice of what the claim is and the ground upon which it rests. *Lewis v. Bell*, 45 Wn. App. 192, 197, 724 P.2d 425 (1986). At the very least, a complaint must identify the legal theories on which the plaintiff seeks recovery. *Dewey v. Tacoma School District No. 10*, 95 Wn. App. 18, 25 (1999). A party who does not plead a cause of action or theory of recovery cannot finesse the issue by later inserting the theory into trial or appellate briefs and contending it was present all along. *Dewey v. Tacoma School District No. 10*, 95 Wn. App. 18, 26 (1999).

Dion Blackburn's summary opening section, in paragraph 6 of the complaint, invoked the ADA. The summary paragraph suggested that Dion sought accommodations from OAH and DSHS pursuant to the ADA.

Dion Blackburn's first cause of action pled a negligence claim. The pleadings asserted that DSHS and OAH had breached duties of care toward Dion, thereby causing

her to suffer harm. Still, the language in the negligence cause of action referenced

reasonable accommodations under WAC 10-24-010. This regulation implements

"accommodations under the federal Americans with Disabilities Act (ADA)." WAC 10-

24-010(1). We conclude that OAH and DSHS received fair notice that Dion sought

recovery under the ADA.

Dion Blackburn complains that OAH and DSHS, both branches of the state of

Washington, took inconsistent positions before the superior court as to whether she pled a

claim under the ADA. She asks us to apply judicial estoppel to bar both state entities

from contending she never sued under the ADA. We need not address this contention.

## Motion to Amend Complaint

Dion Blackburn assigns error to the superior court's denial of her motion to amend

her complaint a second time. The motion sought to expressly add causes of action under

the ADA and the WLAD. We already have ruled that her first amended complaint

included a cause of action under the ADA. The addition of a WLAD claim would not

impact our ruling on appeal. Therefore, we avoid addressing this assignment of error.

## Motion to Continue for Discovery

In her appeal brief, Dion Blackburn complains that the trial court granted

discovery sanctions against her when the court denied her second motion to continue the

summary judgment motions for purposes of discovery. We reject this reframing of the

assignment of error. Blackburn cites no authority for the proposition that denying a

19

motion to continue a summary judgment motion amounts to discovery sanctions. We

review this assignment of error as a denial of the continuance motion under CR 56(f).

A trial court may continue a summary judgment hearing if a party shows need to

obtain affidavits, take deposition, or conduct other discovery. CR 56(f). This court

reviews a trial court's denial to continue a summary judgment motion for abuse of

discretion, reversing only if the decision was based on untenable or unreasonable

grounds. *Building Industry Association of Washington v. McCarthy*, 152 Wn. App. 720,

743, 218 P.3d 196 (2009).

A trial court may deny a motion for a continuance if the requesting party does not

have a good reason for the delay in obtaining the evidence. *Butler v. Joy*, 116 Wn. App.

291, 299, 65 P.3d 671 (2003). Dion Blackburn had obtained an earlier continuance but

failed to pursue discovery after the continuance. Because Dion couches this assignment

of error in terms of a discovery sanction, she fails to analyze the denial of additional

discovery in accordance with the principles announced under CR 56(f). We rule that the

trial court did not abuse discretion when denying the motion for continuance.

## Affirmative Defenses

We continue in our review of the appeal on the assumption that Dion Blackburn

pled causes of action for violations of the ADA, negligence, denial of due process, and

violation of the PRA. Dion limits her PRA cause of action to DSHS. OAH and DSHS

assert the defense of Eleventh Amendment sovereign immunity against the ADA claim

since the claim arises under federal law. DSHS also asserts sovereign immunity with regard to the due process cause of action. OAH raises quasi-judicial immunity for all three claims targeting it. DSHS raises the defenses of res judicata and the statute of limitations to the negligence, ADA, and due process claims. Finally, DSHS contends that Dion's PRA cause of action was premature.

## Sovereign Immunity

Sovereign immunity implicates a federal court's jurisdiction. *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994). Neither party has suggested that sovereign immunity rids a state court of jurisdiction. Still, we proceed to resolve sovereign immunity before addressing the merits of the case. A court needs jurisdiction to address the merits. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). We address sovereign immunity for an ADA first and later discuss immunity for a due process cause of action.

Resolution of sovereign immunity sends us traveling on a meandering path through the fog, sometimes on a federal track and sometimes on a state track. We conclude that the facts presented by Blackburn, in opposition to the state subdivisions' summary judgment motions and in the context of her allegations of a violation of the ADA, preclude sovereign immunity.

The Americans with Disabilities Act of 1990 forbids discrimination against disabled persons in three major areas of public life. Title I covers discrimination in employment. Title II blankets discrimination in public services, programs, and benefits. Title III concerns handicap discrimination in public accommodations. Dion Blackburn's suit implicates Title II.

42 U.S.C. § 12132, the focus of ADA Title II, declares:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity.

The act defines the term "public entity" to include state and local governments, as well as their agencies and instrumentalities. § 12131(1). Persons with disabilities are "qualified" if they, "with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meet[] the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." § 12131(2). Title II's enforcement provision incorporates by reference § 505 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a, which authorizes private citizens to bring suit for money damages. 42 U.S.C. § 12133.

We juxtapose 42 U.S.C. § 12132 with the Eleventh Amendment to the United States Constitution. The Eleventh Amendment proclaims:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign State.

The amendment expressly precludes federal courts from entertaining suits against a state by a citizen of another state. The language does not prevent federal law from applying in a state court suit against a state, even if the law imposes damages on the state. Nor does the wording preclude suit, even in federal court, of a citizen of a state against his state of residence. Still, the United States Supreme Court has repeatedly held that Eleventh Amendment immunity applies to unconsented suits brought by a state's own citizens. *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 363, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001); *Kimel v. Florida Board of Regents*, 528 U.S. 62, 72-73, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000). The Eleventh Amendment even prohibits suits brought against nonconsenting states in state court based on federal law. *Alden v. Maine*, 527 U.S. 706, 731-32, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999); *Harrell v. Washington State ex rel. Department of Social & Health Services*, 170 Wn. App. 386, 402, 285 P.3d 159 (2012). For purposes of Eleventh Amendment immunity, local governments, including judicial actors, are entitled to the same shield from suits afforded to states. *Mount Healthy City School Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977).

The United States Congress may abrogate the states' Eleventh Amendment immunity in order to enforce another constitutional provision. *Tennessee v. Lane*, 541 U.S. 509, 517, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004). This congressional power generally derives from the Fourteenth Amendment. According to the United States Supreme Court, Congress can abrogate a state's sovereign immunity when it does so pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment to enforce the substantive guarantees of that sweeping amendment intended to limit state autonomy. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976). This enforcement power is a "broad power indeed." *Mississippi University for Women v. Hogan*, 458 U.S. 718, 732, 102 S. Ct. 3331, 73 L. Ed. 2d 1090 (1982).

The power to abrogate immunity includes the authority both to remedy and to deter violation of rights guaranteed by the Fourteenth Amendment by prohibiting a broader swath of conduct, including that which is not itself forbidden by the Amendment's text. *Kimel v. Florida Board of Regents*, 528 U.S. 62, 81 (2000). Stated differently, Congress may enact prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct. *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721, 727-728, 123 S. Ct. 1972, 155 L. Ed. 2d 953 (2003); *City of Boerne v. Flores*, 521 U.S. 507, 518, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997). For example, in *Nevada Department of Human Resources v. Hibbs*, the high Court upheld the constitutionality of the Family and Medical Leave Act

24

of 1993 in favor of a male state employee because of the breadth of Congress' § 5 power even though the equal protection clause precludes only purposeful discrimination and the employee failed to show intentional discrimination.

To determine whether Congress waived sovereign immunity with any given enactment, a court must ask two predicate questions: first, whether Congress unequivocally expressed its intent to abrogate that immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority. *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). When enacting the ADA, Congress invoked the sweep of its authority, including the power to enforce the Fourteenth Amendment and to regulate commerce. *Tennessee v. Lane*, 541 U.S. 509, 516 (2004). Congress intended the ADA to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities, including in the context of government services. 42 §§ 12101(b)(1), (b)(4). Congress expressly waived Eleventh Amendment sovereign immunity. A portion of the act reads:

> A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter.

42 U.S.C. § 12202 (footnote omitted). Thus, the first question posed of whether Congress intended to waive sovereign immunity is answered in the positive. We must still resolve, however, whether Congress possessed the power to give effect to this intent.

25

While Congress must have a wide berth in devising appropriate remedial and preventative measures for unconstitutional actions, those measures may not work a substantive change to the governing law. *Tennessee v. Lane*, 541 U.S. 509, 520 (2004). If a measure portends a substantive change, Congress has exceeded its authority. The line between remedial legislation and substantive redefinition is not easy to discern. *City of Boerne v. Flores*, 521 U.S. 507, 519-20 (1997). Therefore, Congress must have wide latitude in determining where the boundary lies. *City of Boerne v. Flores*, 521 U.S. 507, 519-20 (1997). In order to demarcate the line between remedial and substantive legislation for purposes of the validity of a congressional enactment under § 5 of the Fourteenth Amendment, the Court asks whether the legislation exhibits a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end. *Tennessee v. Lane*, 541 U.S. 509, 520 (2004). This test may echo the rational relationship test, or intermediate scrutiny test, imposed in equal protection litigation. In *City of Boerne v. Flores*, the Supreme Court held that Congress exceeded its § 5 authority when it enacted the Religious Freedom Restoration Act of 1993 because the enactment's stated purpose was to restore a constitutional rule that the Court had rejected. The act was also significantly out of proportion to the objective of the First Amendment.

A jurist might expect the ADA to implement the equal protection clause, rather than the due process clause, of the Fourteenth Amendment because of the enactment's quest to enable a disadvantaged minority, the physically and mentally disabled, to

26

function in society as equal human beings. Nevertheless, the United States Supreme Court, in *Tennessee v. Lane*, 541 U.S. 509 (2004), accessed the due process clause when assessing whether Congress possessed the power to enact Title II of the ADA and thereby waive sovereign immunity. The Court identified the constitutional rights to attend a trial, to afford access to the public of court hearings, and to participate meaningfully in a hearing and asked whether Title II proportionately remedied violation of those rights when studied in light of the harm caused by lack of access to court proceedings and to judicial justice. In analyzing the proportionality and congruency, the high Court examined the history's abrogation of those rights. Stated differently, the Court sought to discern whether a history of discrimination against the disabled required a powerful remedy to solve difficult and intractable problems that would warrant Title II's strong measures. The Court had previously declared that the Eleventh Amendment precluded the award of money damages under Title I of the ADA for state violations, the title that redresses employment discrimination. *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 360, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001).

George Lane and Beverly Jones brought action against the State of Tennessee and some Tennessee counties. Lane and Jones, both paraplegics who used wheelchairs for mobility, claimed the state court system denied them access to, and the services of, the court because of their disabilities. The government compelled Lane to appear to answer criminal charges on the second floor of a county courthouse that had no elevator. At his

first appearance, Lane crawled up two flights of stairs to get to the courtroom. When

Lane later returned to the courthouse for another hearing, he refused to crawl again or to

be carried by officers to the courtroom. Law enforcement consequently arrested and

jailed Lane for failure to appear. Jones, a certified court reporter, lacked access to a

number of county courthouses, and, as a result, lost both work and an opportunity to

participate in the judicial process. Jones and Lane sought damages and equitable relief

under ADA's Title II.

According to the Supreme Court, in *Tennessee v. Lane*, Title II seeks to enforce

the prohibition on irrational disability discrimination. In doing so, Title II intends to

uphold basic constitutional guarantees, including the right of access to the courts

protected by the due process clause of the Fourteenth Amendment and the confrontation

clause of the Sixth Amendment. The due process clause requires the States to afford civil

litigants a meaningful opportunity to be heard by removing obstacles to their full

participation in judicial proceedings. Members of the public, including those with

disabilities, also have a right to open courts secured by the First Amendment.

When perusing the history of treatment of handicapped citizens, the United States

Supreme Court, in *Tennessee v. Lane*, saw a backdrop of pervasive unequal treatment in

the administration of state services and programs, including systematic deprivations of

fundamental rights to those with disabilities. The Court gave examples of denial of the

rights to education, housing, voting, marriage, and juror service and the unjustified civil

commitment of those with handicaps.  In turn, Title II of the ADA reached a wide array

of official conduct in an effort to enforce an equally wide array of constitutional

guarantees.  The State of Tennessee asked the Court to adjudge this breadth of Title II as

a deathblow to its validity.  The State complained that Title II extended to all activities of

government, such as voting booths, education facilities, and seating at municipal owned

hockey stadia and the law's implementation would drain government of resources.  The

high Court refused to examine the broad range of Title II applications and instead limited

its review to access to courts and a meaningful participation in litigation.  The Court

adjudged Title II as valid § 5 legislation at least to the extent it applied to the class of

cases implicating accessibility to judicial services.  Title II's requirement of court

accessibility was congruent and proportional to its object of enforcing the right of access

to the courts.  The unequal treatment of disabled persons in the administration of judicial

services had a long history, and persistent legislative efforts failed to remedy the

problem.

The United States Supreme Court next considered the waiver of sovereign

immunity under Title II of the ADA in a suit wherein a paraplegic inmate in a state prison

sued the State of Georgia and prison officials for money damages based on prison

conditions unconducive to his handicap.  *United States v. Georgia*, 546 U.S. 151, 126 S.

Ct. 877, 163 L. Ed. 2d 650 (2006).  The Supreme Court reversed dismissal of Tony

Goodman's ADA claim and remanded for further consideration as to whether the

prisoner pled constitutional violations commensurate with his ADA claims that Congress could validly redress by abrogating sovereign immunity. The leading opinion spotted, in Goodman's pro se complaint, a possible assertion of an Eighth Amendment claim of cruel and unusual punishment that the Fourteenth Amendment's due process clause would incorporate.

OAH and DSHS recognize that *Tennessee v. Lane* and *United States v. Georgia* declared that Congress abrogated in part Washington's sovereign immunity under Title II of the ADA, but both state government divisions assert this waiver applies only in limited circumstances. The State subdivisions emphasize that the Supreme Court qualified its holding, in *Tennessee v. Lane*, by stating it did not intend to consider the wide variety of applications of Title II to the states. Instead, according to DSHS and OAH, the Court allowed abrogation in two categories: (1) a person's fundamental right of access to the courts, and (2) conduct that actually violates the Fourteenth Amendment. The two defendants go further and imply the right to access extends only to physical access. OAH and DSHS then limit Dion Blackburn's ADA claim to an assertion that she had a right to a referral of a representative at state expense. Finally, as the argument proceeds, the right to a referral in an administrative proceeding does not fall under either the right to access or a direct violation of the Fourteenth Amendment. In so arguing, OAH and DSHS emphasize the shocking facts of a paraplegic crawling up stairs to a Tennessee courtroom.

In furtherance of its argument, OAH forwards *In re Marriage of King*, 162 Wn.2d 378, 174 P.3d 659 (2007), for the proposition that the right to access to the courts does not extend to a publicly-funded legal representative in civil court. During a five-day parenting plan trial, Brenda King acted pro se, while counsel represented Michael King. At the trial's conclusion, the superior court entered a parenting plan granting primary residential care of the children to the father. On appeal, Brenda contended that she, as an indigent parent, possessed a constitutional right, under article I, section 3, article I, section 10, and article I, section 12 of the Washington State Constitution, to appointment of counsel at public expense in the dissolution proceeding. This Washington Supreme Court disagreed.

When insisting that the Washington Constitution afforded her a right to appointment of an attorney, Brenda King relied in part on *Tennessee v. Lane*. In response, the Washington Supreme Court wrote:

> The mere fact that "access" is a linguistically broad term does not bring the appellant's inability to obtain counsel within the authority of *Lane* and *Bullock*. The Court in *Lane* was dealing with physical barriers to access and services, barriers that were effectively imposed by the State in that case. References to "meaningful" access in *Lane* should be read in that light: the incongruity of a right of access that is all but denied by physical obstacles. In *Bullock*, the barrier to "access" was court-imposed fees. It is more than an insignificant linguistic leap to equate that barrier to access with a right to publicly funded legal representation.

*In re Marriage of King*, 162 Wn.2d 378, 390 (2007).

31

We recognize that we must follow Washington Supreme Court precedent when applying state law. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227 (1984). We do not have that obligation with respect to federal law. Instead, we are bound by United States Supreme Court rulings on federal law. *Chesapeake & Ohio Railway Co. v. Martin*, 283 U.S. 209, 221, 51 S. Ct. 453, 75 L. Ed. 983 (1931).

We do not read *Tennessee v. Lane* as narrowly as argued by OAH and DSHS and as written by our state high court, in *In re Marriage of King*. We do not read *Tennessee v. Lane* to limit abrogation of sovereign immunity to cases wherein the disabled claimant was denied physical access to the courts. The Court's language never restricted abrogation of sovereign immunity to bodily barriers. Instead, the Court noted that the due process clause also requires the States to afford certain civil litigants a "meaningful opportunity to be heard" by removing obstacles to their full participation in judicial proceedings. *Tennessee v. Lane*, 541 U.S. 509, 523 (2004). The Court cited *Boddie v. Connecticut*, 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971), wherein the Court held that the State of Connecticut must waive a divorce filing fee for those who cannot afford the payment. The Court also cited *M.L.B. v. S.L.J.*, 519 U.S. 102, 117 S. Ct. 555, 136 L. Ed. 2d 473 (1996), wherein the Court also required the State of Mississippi to waive trial transcription fees for a mother appealing termination of her parental rights. These barriers to access to justice entailed indigency, not physical handicaps.

OAH and DSHS's contention belittles mental disabilities when compared to physical disabilities. The ADA defines a "disability" as including both "physical or mental impairments." 42 U.S.C. § 12102(1)(A). We deem a mental disability as serious as a physical disability and one that also creates barriers to meaningful access to justice.

We also distinguish *In re Marriage of King* because Dion Blackburn seeks, in the alternative, the assistance of an ADA coordinator. Presumably, DSHS has such a coordinator on staff, and DSHS would not incur costs if the coordinator assisted Dion. We also note that *In re Marriage of King* was decided under the Washington Constitution, not the United States Constitution's due process clause. Brenda King did not assert the ADA.

The facts of Dion Blackburn's case have yet to be established. Nevertheless, Dion alleges that the failure of OAH and DSHS to appoint her an attorney or other representative denied her the opportunity to fully present all of her evidence. We deem this allegation to fall under the umbrella of denial of a meaningful opportunity to be heard.

OAH also relies on *Turner v. Rogers*, 564 U.S. 431, 131 S. Ct. 2507, 180 L. Ed. 2d 452 (2011), for the proposition that child support proceedings do not implicate a due process right to representation. But OAH, despite quoting the relevant passage from *Turner*, does not recognize the import of *Turner*. That critical segment reads:

We consequently hold that the Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration (for up to a year). In particular, that Clause does not require the provision of counsel where the opposing parent or other custodian (to whom support funds are owed) is not represented by counsel and the State provides alternative procedural safeguards equivalent to those we have mentioned (adequate notice of the importance of ability to pay, fair opportunity to present, and to dispute, relevant information, and court findings).

*Turner v. Rogers*, 564 U.S. 431, 448 (2011).

A South Carolina court held Michael Turner in contempt for failing to pay child support. On appeal, Turner argued that the State violated his due process rights by failing to appoint him counsel before being incarcerated for contempt. The Supreme Court agreed. Although the Supreme Court wrote that appointment of counsel was not necessarily required at civil contempt proceedings against an indigent individual, due process may require provision of counsel when the opposing parent is represented by counsel and the State fails to provide alternative procedural safeguards to insure adequate presentation of relevant information. Because the State did not supply alternative methods to assist Turner in presenting his financial data, the State deprived Turner of due process by failing to appoint counsel at public expense.

During her OAH hearing, Dion Blackburn faced an experienced litigator employed by DCS. She maintains that her disability prevented her from presenting

34

critical medical records and either counsel or an ADA coordinator could have assisted her in this presentation. Thus, *Turner v. Rogers* benefits Dion, not OAH.

DSHS cites *Harrell v. Washington State ex rel. Department of Social & Health Services*, 170 Wn. App. 386 (2012) as granting it sovereign immunity from ADA claims. Garrett Harrell sued DSHS for denying him employment as a special commitment counselor because of his night blindness. Because Harrell sued based on employment discrimination, not discrimination in public services and benefits, Title I of the ADA controlled. Therefore, this court correctly followed *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001) wherein the United States Supreme Court held that Congress did not waive sovereign immunity for States under Title I of the ADA. Assuming this court declared Congress to lack the power to waive sovereign immunity for the entirety of ADA, we erred. *Harrell* fittingly ignored *Tennessee v. Lane*, 541 U.S. 509 (2004), decided eight years earlier, because *Tennessee v. Lane* addressed Title II of the ADA.

*Tennessee v. Lane*, 541 U.S. 509 (2004) directs a court to assay the proportionality of the remedy afforded under Title II to the historic injury suffered by disabled citizens in the context of the particular harm suffered by the plaintiff. Because of the extensive balancing performed by the United States Supreme Court, in *Tennessee v. Lane*, in the context of the due process right to meaningful participation in litigation, we see no need to perform a further analysis when the plaintiff claims denial of a meaningful opportunity

to litigate her case because of a disability. Congress appropriately exercised its power to waive sovereign immunity in the context of Dion's allegations.

We issue the opposite ruling with regard to Dion Blackburn's cause of action of denial of due process. No legislative act abrogates Washington's sovereign immunity from a money suit arising under the due process clause. A suit seeking money damages for a violation of the due process clause must employ the vehicle of 42 U.S.C. § 1983, which creates a remedy for the violation of rights under the United States Constitution. Section 1983 does not trump Eleventh Amendment immunity for a state and state departments. *Quern v. Jordan*, 440 U.S. 332, 338, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979); *Cross v. State of Alabama, State Department of Mental Health & Mental Retardation*, 49 F.3d 1490, 1502 (11th Cir. 1995). Although only DSHS seeks sovereign immunity from the § 1983 claim, the OAH is also a state department and unmistakably also entitled to the immunity.

Quasi-Judicial Immunity

Since the two state agencies do not enjoy sovereign immunity under the ADA, we move to quasi-judicial immunity. Only OAH asserts this defense. OAH contends it is entitled to quasi-judicial immunity because Dion Blackburn sues over an alleged failure of OAH's administrative law judge to appoint her a representative for the child support proceeding. We agree that OAH deserves quasi-judicial immunity and that this immunity

extends to the remaining two claims of negligence, and an ADA violation. The immunity would also extend to deprivation of due process.

Under numerous circumstances, government officials enjoy qualified immunity from damages liability when charged with constitutional or common law tort liability. Under this qualified immunity, the official, usually an executive branch employee, retains immunity from a common law tort unless acting in bad faith. *Musso-Escude v. Edwards*, 101 Wn. App. 560, 569, 4 P.3d 151 (2000). For constitutional torts redressed under 42 U.S.C. § 1983, qualified immunity protects an executive actor from liability for her actions as long as she does not violate relevant law "clearly established" at the time of the alleged violation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Westmoreland v. State*, 73 Wn. App. 286, 291-92, 869 P.2d 71 (1994).

Contrary to executive officers, judicial officers retain absolute immunity because their special functions require a full exemption from liability. *Butz v. Economou*, 438 U.S. 478, 508, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978). English courts afforded judges absolute immunity for acts exercised in their judicial functions for centuries before the thirteen colonies broke from the kingdom. *Bradley v. Fisher*, 13 Wall. 335, 347, 20 L. Ed. 646 (1871). This immunity continues today for common law torts. *Taggart v. State*, 118 Wn.2d 195, 203, 822 P.2d 243 (1992). Judges, including state court judges, also receive immunity when sued on constitutional claims pursuant to 42 U.S.C. § 1983. *Pierson v. Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967). Finally, state

judges sued for ADA violations possess immunity. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001).

Like other forms of official immunity, judicial immunity is an immunity from suit, not just from the ultimate assessment of damages. *Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991); *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) (plurality opinion). Immunity is not merely a defense to liability but an entitlement not to stand trial or face the other burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Janaszak v. State*, 173 Wn. App. 703, 712, 297 P. 3d 723 (2013). Accordingly, a claimant does not overcome the defense by allegations of bad faith, corruption, or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and an eventual trial. *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Butz v. Economou*, 438 U.S. 478, 509 (1978).

Decisional law lists various related reasons behind judicial immunity. Judicial immunity does not exist for the benefit of the judge; rather, it protects the administration of justice by ensuring that judges decide cases without fear of personal lawsuits. *Lallas v. Skagit County*, 167 Wn.2d 861, 864, 225 P.3d 910 (2009); *Taggart v. State*, 118 Wn.2d 195, 203 (1992). The judge must decide all cases within his or her jurisdiction brought before him or her, including controversial cases that arouse the most intense feelings in the litigants. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). The law tasks judges to decide controversies involving great pecuniary interests, the liberty and character of the parties,

and disputes that excite the deepest feelings. *Butz v. Economou*, 438 U.S. 478, 509 (1978). Such adjudications invariably produce at least one losing party, who rejects the soundness of the decision. *Butz v. Economou*, 438 U.S. 478, 509 (1978). The loser often ascribes improper motives to the judge. *Butz v. Economou*, 438 U.S. 478, 509 (1978).

The judge should not fear that unsatisfied litigants will hound him or her with litigation charging malice or corruption. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). If a civil action could be maintained against a judge by virtue of an allegation of malice, judges would lose that independence without which no judiciary can either be respectable or useful. *Butz v. Economou*, 438 U.S. 478, 509 (1978). An appeal may correct any mistakes. *Pierson v. Ray*, 386 U.S. 547, 554 (1967).

One might expect an administrative law judge to be considered a judge for purposes of "judicial immunity," since the office includes the word "judge." Nevertheless, the law instead creates a new category of immunity and assigns the administrative law judge "quasi-judicial immunity."

Under the quasi-judicial immunity doctrine, judicial immunity afforded judges extends to executive branch judicial officers, such as administrative law judges, who serve in judicial capacities. *Layne v. Hyde*, 54 Wn. App. 125, 773 P.2d 83 (1989). Quasi-judicial immunity attaches to persons or entities who perform functions so

comparable to those performed by judges that the persons should share the judge's

absolute immunity while performing those functions. *Savage v. State*, 127 Wn.2d 434,

441, 899 P.2d 1270 (1995); *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 99,

829 P.2d 746 (1992). When quasi-judicial immunity applies, an absolute bar precludes

civil liability. *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 99 (1992);

*Babcock v. State*, 116 Wn.2d 596, 606-08, 809 P.2d 143 (1991).

Adjudication within an administrative agency shares enough of the characteristics

of the judicial process that administrative law judges should also be immune from suits

for damages. *Butz v. Economou*, 438 U.S. 478, 512-13 (1978). The conflicts which

hearing examiners seek to resolve are as fractious as those which come to court. *Butz v.*

*Economou*, 438 U.S. 478, 513 (1978). Administrative law requires that agency

adjudication contain many of the same safeguards available in the judicial process. *Butz*

*v. Economou*, 438 U.S. 478, 512-13 (1978). The proceedings are adversary in nature.

*Butz v. Economou*, 438 U.S. 478, 513 (1978). They are conducted before a trier of fact

insulated from political influence. *Butz v. Economou*, 438 U.S. 478, 513 (1978). A party

is entitled to present his case by oral or documentary evidence. *Butz v. Economou*, 438

U.S. 478, 513 (1978). The transcript of testimony and exhibits together with the

pleadings constitute the exclusive record for decision. *Butz v. Economou*, 438 U.S. 478,

513 (1978). The parties are entitled to know the findings and conclusions on all of the

issues of fact, law, or discretion presented on the record. *Butz v. Economou*, 438 U.S.

478, 513 (1978). The administrative law judge, like a judge, issues subpoenas, rules on proffers of evidence, regulates the course of the hearing, and makes or recommend decisions. *Butz v. Economou*, 438 U.S. 478, 513 (1978). Those who complain of error in such proceedings may seek agency or judicial review. *Butz v. Economou*, 438 U.S. 478, 514 (1978). Any complaints of error must be resolved by an appeal rather than suit against the administrative law judge. *Butz v. Economou*, 438 U.S. 478, 514 (1978).

To determine if quasi-judicial immunity applies, Washington courts review the function the person performs, rather than the person who is performing it. *Lallas v. Skagit County*, 167 Wn.2d 861, 865 (2009). This analysis may require a detailed examination of those functions as listed in authorizing statutes. *Kelley v. Pierce County*, 179 Wn. App. 566, 573-74, 319 P.3d 74 (2014).

In its brief, OAH efficiently and effectively outlines the nature and duties of an ALJ employed by OAH as established by Washington statutes. The OAH retains independence from state administrative agencies and remains responsible for impartial administration of administrative hearings. RCW 34.12.010. A chief ALJ appoints OAH ALJs, and the ALJs sit subject to discipline and removal for cause. RCW 34.12.030. The ALJ holds similar powers to a judge. The ALJ issues subpoenas, enters protection orders, and controls discovery. RCW 34.05.446. The ALJ makes evidentiary rulings. RCW 34.05.452. An ALJ enters conclusions of law based on statutes, regulations, and case law. RCW 34.05.461(3). OAH maintains a record of ALJ decisions.

RCW 34.05.476. A losing party may correct any error by judicial review to the superior court. RCW 34.05.558.

Dion Blackburn could have sought review, by the chief ALJ, of any decision to deny her a referral to the ADA coordinator or appointment of an attorney. WAC 10-24-010(6). Blackburn could have also sought judicial review of any refusal to consider evidence. RCW 34.05.570(3). In short, ALJs act in a judicial capacity throughout the entire administrative procedure. *Layne v. Hyde*, 54 Wn. App. 125, 131 (1989).

Many Washington decisions reference *Butz v. Economou*, 438 U.S. 478 (1978), when outlining the parameters of and when listing the rationales for quasi-judicial immunity. The United States Supreme Court granted the Department of Agriculture judicial review officer, the chief hearing examiner, and the department attorney absolute immunity from all of Economou's causes of action, which included violation of due process, violation of the First Amendment, abuse of legal process, malicious prosecution, invasion of privacy, negligence, and trespass.

In *Layne v. Hyde*, 54 Wn. App. 125 (1989), an employer sued the administrative law judge and unemployment compensation claimant's counsel for conspiracy to violate its civil rights, abuse of process, outrage, and negligence. The employer alleged the ALJ and the employee's attorney collaborated to deprive it of a fair employment security hearing. In an amended complaint, the employer further alleged that the ALJ lacked

jurisdiction over the employment security case because of his political "interest" and misconduct. This court affirmed dismissal of the suit based on quasi-judicial immunity.

Judicial immunity and quasi-judicial immunity extend complete immunity to a judge performing as a judge, but a judge exercising nonjudicial functions lacks absolute immunity. *Butz v. Economou*, 438 U.S. 478, 509 (1978); *Lallas v. Skagit County*, 167 Wn.2d 861, 865 (2009). Absolute judicial immunity does not apply to nonjudicial acts, such as administrative, legislative, and executive functions that judges may on occasion be assigned to perform. *Forrester v. White*, 484 U.S. 219, 227, 108 S. Ct. 538, 98 L. Ed. 2d 555 (1988); *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 100 (1992).

The test for determining whether the act of a hearing examiner or an administrative law judge enjoys quasi-judicial immunity differs under federal law from state law. Federal law employs the following factors to determine whether a particular act is judicial in nature:

> (1) the precise act is a normal judicial function; (2) the events occurred in the courtroom or an adjacent area such as judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the events at issue arose directly and immediately out of a confrontation with the judge in his or her official capacity.

*Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (quoting *Meek v. County of Riverside*, 183 F.3d 962, 967 (9th Cir. 1999)). To make a showing that quasi-judicial immunity is justified under state law, the government must establish (1) the official performs a function analogous to a function performed by judges, (2) the policy reasons

43

justifying judicial immunity would also justify immunity for that official, and (3)

sufficient safeguards mitigate the harshness of absolute immunity. *Lutheran Day Care v.*

*Snohomish County*, 119 Wn.2d 91, 106 (1992).

Courts construe the factors governing quasi-judicial immunity broadly in favor of

immunity. *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993). Courts grant

immunity even when one or more of the factors are missing. *Adams v. McIlhany*, 764

F.2d 294, 297 (5th Cir. 1985).

The federal law test applies to Dion Blackburn's ADA and due process claims.

Since Blackburn grounds a claim of negligence on the failure of the ALJ to enforce a

regulation in part implementing the ADA, federal law may apply to the negligence claim

also. Regardless of whether the state test applies to the negligence cause of action, OAH

satisfies both tests in Blackburn's appeal.

The OAH ALJs performed the function of a judge. They entertained discretion.

They issued a judicial decision after a hearing open to the public. They regulated the

course of a case, including an evidentiary hearing. They followed rules. Their decisions

should not have been impacted by a fear of being assessed damages.

Dion Blackburn contends that an ALJ's duty to refer a litigant to an ADA

coordinator constitutes an administrative, rather than a judicial function. Blackburn

suggests that such a referral generally does not occur during an administrative hearing,

such that it does not come inside the courtroom. Blackburn emphasizes that a referral does not constitute a decision on the merits of a case.

We do not construe the task of appointing an ADA coordinator so narrowly. Dion Blackburn never asked for appointment of counsel or an ADA coordinator. She argues instead that the administrative law judge should have known of the need for an appointment based on the judges' observations of her during the administrative hearing. Thus, an appointment would have resulted from the judicial function of presiding over a hearing. Any ruling would have impacted the process of the case during the administrative hearing. Even if Dion had requested assistance in advance of the hearing, the ALJ would have needed to adjudge Dion's need for assistance. The ALJ may have sought input from other parties as to the propriety of an appointment. Any referral decision would have resulted from Dion petitioning the ALJ and the ALJ issuing an order in a discrete child support case rather than adopting a broad policy for administration of the OAH.

In reviewing the condition of a party and determining her need for a lawyer or other assistant, the ALJ functions in the nature of a judge. A decision to appoint echoes the judge's sole authority to assess whether one is competent to stand trial. A judge holds a duty to adjudge the capacity of a criminal defendant if the judge doubts the capacity. RCW 10.77.060(1).

45

*Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) parallels the circumstances of Dion Blackburn's appeal to this court. Christopher Duvall suffered from near deafness. Duvall was party to a marital dissolution action in the superior court of Kitsap County. He requested from the superior court judge and the superior court's ADA coordinator contemporaneous videotext display of the trial. Duvall insisted that other technology offered by the county did not suffice for his unique circumstances. Both the coordinator and the superior court judge denied the request. The judge first learned of the request when Duvall's attorney brought a motion at the beginning of trial for the accommodation.

Christopher Duvall sued the superior court judge, the court administrator, the county's ADA coordinator, and Kitsap County for failing to accommodate his hearing impairment. He contended that the defendants violated the federal Rehabilitation Act, the Americans with Disabilities Act, and the Washington Law against Discrimination by failing to provide real-time transcription for the marital dissolution hearings. The district court granted summary judgment to the judge and the court administrator on the basis of judicial immunity. The circuit court of appeals held that the superior court judge acted in a judicial capacity, not an administrative or executive capacity, when he refused to accommodate Duvall. The judge rendered his decision while presiding over the marital dissolution suit. He rendered a decision in response to a motion and when exercising control over the courtroom.

Dion Blackburn sues OAH, not either of the administrative law judges who reviewed her challenge to DCS' imposition of child support. OAH, however, is entitled to the same quasi-judicial immunity afforded the ALJs. The grant of quasi-judicial immunity to an administrative law judge extends to the judge's employer and to the government entities vicariously liable for the judicial officer's act. *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 101 (1992); *Creelman v. Svenning*, 67 Wn.2d 882, 885, 410 P.2d 606 (1966); *Janaszak v. State*, 173 Wn. App. 703, 719 (2013).

Res Judicata

DSHS seeks the affirmation of dismissal of the negligence, ADA, and due process claims against it on the doctrine of res judicata. DSHS maintains that, because Dion could have asserted any rights to the appointment of an attorney or ADA coordinator or any rights to the review of her medical records either during the 2016 or 2018 administrative hearing or on judicial review, res judicata now bars her from asserting the causes of action in this later proceeding. We agree. Dion had the opportunity to litigate her need for accommodation and the importance of the ALJ's review of medical or psychological records during either proceeding. Although our ruling applies to each proceeding, we write as if DSHS prosecuted only the 2016 proceeding.

Dion Blackburn asserts two federal claims: an ADA violation and denial of due process under the Fourteenth Amendment. The latter claim falls under 42 U.S.C. § 1983, the vehicle under which a claimant enforces federal constitutional rights. *Graham v.*

47

*Connor*, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); *Eugster v. Washington State Bar Association*, 198 Wn. App. 758, 773, 397 P.3d 131 (2017). We must first decide whether we apply res judicata principles emanating from Washington law or federal law to these federal causes of action. Res judicata may bar constitutional claims brought under 42 U.S.C. § 1983. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984); *Allen v. McCurry*, 449 U.S. 90, 94 n.5, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980). 28 U.S.C. § 1738 requires all federal courts to give preclusive effect to state court judgments whenever the courts of the state, from which the judgments emerged, would do so. Therefore, under federal law, state preclusion rules, including res judicata principles, govern whether a state court judgment bars a plaintiff's § 1983 claim. *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 327 (4th Cir. 2005). State principles of res judicata also control the bringing of an ADA cause of action. *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816-17 (6th Cir. 2010).

Under Washington law, res judicata, or claim preclusion, prohibits the relitigation of claims and issues that were litigated or could have been litigated in a prior action. *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 763, 887 P.2d 898 (1995); *Pederson v. Potter*, 103 Wn. App. 62, 67, 11 P.3d 833 (2000). Res judicata extends not only to affirmative claims but also to defenses that the claimant could have asserted in the earlier proceeding. *Eugster v. Washington State Bar Association*, 198 Wn. App. 758, 791

48

(2017). The doctrine curtails multiplicity of actions and harassment in the courts. *Bordeaux v. Ingersoll Rand Co.*, 71 Wn.2d 392, 395, 429 P.2d 207 (1967).

The broad general rule of res judicata suggests that a party is always prohibited from litigating a claim or issue that could have been raised in any earlier suit. Nevertheless, limits constrain the doctrine. Under Washington law, for the doctrine of res judicata to apply, a prior judgment must have a concurrence of identity with a subsequent action in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made. *Rains v. State*, 100 Wn.2d 660, 663, 674 P.2d 165 (1983); *Berschauer Phillips Construction Co. v. Mutual of Enumclaw Insurance Co.*, 175 Wn. App. 222, 227-28, 308 P.3d 681 (2013).

Dion Blackburn contends her civil suit and the administrative proceedings lack any of the four concurrences of identity. She argues that this lawsuit would not impair or destroy any rights or interests established by the October 4, 2018 child support order. She highlights that the 2016 and 2018 orders create no rights in DSHS. She underscores that she does not sue her ex-husband.

Blackburn contends the rights involved in the child support administrative proceeding differ from the rights in her civil suit against DSHS. The administrative hearing implicated the rights of Brad to child support. This second case involves the right to assistance under the ADA and to due process. Dion further maintains that the

transactional nucleus of the events is different for each proceeding based on the same analysis applied to the other elements of res judicata.

Dion Blackburn asserts that DSHS erroneously deems that she wishes her child support obligation to be lowered. Dion concedes that the presence of an attorney on her behalf may not have led to a lower child support amount. She instead seeks recovery for the loss of an attorney and the value of this. Dion's assertion conflicts with her appellate brief, in which she specifically asks the court to void the child support order. Opening Br. at 77.

Dion Blackburn contends the evidence in this civil suit differs from evidence in the administrative proceeding. In the present suit, she must show a disability that needs a reasonable accommodation and a failure to accommodate the disability. Evidence in the administrative proceeding involved the income and expenses of Dion and the father of her children. The evidence in this civil suit involves internal communications between OAH and DSHS. Dion submitted psychological records to DSHS and DSHS failed to forward the records. The evidence in this new suit would also include the behavior of Blackburn that should have alerted DSHS to the need for an attorney or coordinator.

DSHS observes that Dion Blackburn asserts, in the case on appeal, that her behavior in the administrative process should have forewarned DSHS to the need for reasonable accommodations. DSHS maintains that Dion wanted the ALJ to find that she suffered a handicap that needed accommodations. That behavior and the evidence of that

50

behavior would have been present in the first proceeding. Dion also wanted DSHS and OAH to communicate in the previous case. Thus, the facts, on which Dion relies for her due process and ADA claim were integral to the administrative process. Dion could and should have emphasized the need for assistance and the provision of records to DSHS during the administrative hearing or on judicial review of the ALJ's ruling.

We review the elements of res judicata out of order. We first address identity of parties. DSHS was not a named party in the 2018 administrative proceeding. Nevertheless, DSHS functioned as the plaintiff that prosecuted the demand for payment of child support. The rule of identity of parties does not demand that each party be a named party in both proceedings. The rule may benefit one in control of the litigation. *Stevens County v. Futurewise*, 146 Wn. App. 493, 504, 192 P.3d 1 (2008).

Dion Blackburn does not argue that DSHS was not a party to the 2018 administrative proceeding. Since Dion and DSHS litigate in their respective individual and governmental capacities in both procedures, we further hold that the quality of the parties corresponds in the 2018 proceeding and this lawsuit.

Dion Blackburn asserts that facts relevant to her civil suit differ from the facts presented during the 2018 administrative process. Whereas, this argument is literally true in that the ALJ did not rely on the facts now before this court, the argument fails to show that the facts transpired during the administrative proceeding. The facts Dion now asserts about her need for assistance were facts observed by the ALJ during the 2018 hearing. If

one objects to the ongoing process before a court or hearing examiner, the law expects one to object at the time of the process. We highlight that Dion asked the ALJ, during the 2016 hearing, whether she should present psychological records she now wishes DSHS would have forwarded. The ALJ may have committed error when responding that he did not need the records, but any error should have been appealed and was not the fault of DSHS.

The problematic res judicata factor for this appeal is the second factor of an identity of the cause of action. If we took this requirement literally, we would hold that the proceedings lack this identity. Washington law does not necessarily define the term "cause of action" for purposes of res judicata. In other contexts, the Washington courts have referred to a "cause of action" as the act that occasioned the injury, *McFarling v. Evaneski*, 141 Wn. App. 400, 405, 171 P.3d 497 (2007), and a legal right of the plaintiff invaded by the defendant. *Cowley v. Northern Pacific Railway Co.*, 68 Wash. 558, 563, 123 P. 998 (1912). *Black's Law Dictionary* defines the term as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person; claim." BLACK'S LAW DICTIONARY 266 (10th ed. 2014). These definitions fit awkwardly into the relationship between the administrative hearings and Dion Blackburn civil suit. The operative facts of the administrative hearing were the income of Dion and Brad Blackburn and their ability to work. The operative facts in the pending suit include any disability of Dion, her

tendering a letter from a treatment provider to DSHS to forward to the ALJ, and her appearance and performance during the two administrative hearings.

The res judicata doctrine either redefines or undefines the term "cause of action" as found in other settings. Washington utilizes no specific test for determining identity of causes of action. *Rains v. State*, 100 Wn.2d 660, 663-64 (1983). Consideration of four factors provide an analytical tool for determining whether two causes of action are identical for purposes of res judicata: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action, (2) whether substantially the same evidence is presented in the two actions, (3) whether the two suits involve infringement of the same right, and (4) whether the two suits arise out of the same transactional nucleus of facts. *Berschauer Phillips Construction Co. v. Mutual of Enumclaw Insurance Co.*, 175 Wn. App. 222, 230 (2013). All four elements need not be present to bar the second legal action. *Rains v. State*, 100 Wn.2d 660, 664 (1983)

Dion Blackburn's failure to assert a due process or ADA argument in the administrative actions does not impede enforcement of res judicata. Res judicata applies to actions, including § 1983 actions, with respect to the issues actually litigated and also issues that could have been but were not litigated in the state court proceedings. *Migra v. Warren City School District Board of Education*, 465 U.S. 75 (1984); *Berschauer Phillips Construction Co. v. Mutual of Enumclaw Insurance Co.*, 175 Wn. App. 222, 227-

28 (2013).  Res judicata applies not only to points on which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point that properly belonged to the subject of the litigation, and which the parties, exercising reasonable diligence, might have brought forward at that time.  *Sound Built Homes, Inc. v. Windermere Real Estate/South, Inc.*, 118 Wn. App. 617, 631 n.28, 72 P.3d 788 (2003).

Although many tests have been suggested for determining whether a matter should have been litigated in a prior proceeding, there is no simple or all-inclusive test.  *Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. 320, 330, 941 P.2d 1108 (1997).  The controlling factors actually echo the factors reviewed when determining if the two suits entail the same cause of action.  When determining if an argument should have been raised before, courts consider a variety of factors, including, whether the present and prior proceedings arise out of the same facts, whether they involve substantially the same evidence, and whether rights or interests established in the first proceeding would be destroyed or impaired by completing the second proceeding.  *Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. 320, 330 (1997).  A matter should have been raised and decided earlier if it is merely an alternate theory of recovery or an alternate remedy.  *Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. at 331.  A plaintiff may not reinstitute, against the same parties, the same cause of action based on the same array of facts merely by changing legal theories and sovereignties.  *Howe v. Brouse*, 422 F.2d 347, 348 (8th Cir. 1970).

The following principles particularly bear importance in Dion Blackburn's superior court civil suit. When a party should reasonably foresee that an adverse state court judgment will create a constitutional issue, that issue should be argued before the state court. *Roy v. City of Augusta*, 712 F.2d 1517, 1521 (1st Cir. 1983); *Eugster v. Washington State Bar Association*, 198 Wn. App. 758, 790 (2017). Otherwise, the principles of res judicata will bar a party from later raising the constitutional claim against the same parties in an action under § 1983. *Roy v. City of Augusta*, 712 F.2d 1571, 1521 (1st Cir. 1983); *Eugster v. Washington State Bar Association*, 198 Wn. App. 758, 790-91 (2017). The principle of res judicata that bars claims that might have been raised extends to a defendant in an earlier civil suit who failed to raise a defense based on the constitution. *Lovely v. Laliberte*, 498 F.2d 1261, 1263 (1st Cir. 1974); *Eugster v. Washington State Bar Association*, 198 Wn. App. 758, 791 (2017). This principle even extends to defenses that a party could have raised in an administrative proceeding. *Krison v. Nehls*, 767 F.2d 344, 348 (7th Cir. 1985); *Eugster v. Washington State Bar Association*, 198 Wn. App. 758, 791 (2017).

We deem *Eugster v. Washington State Bar Association* controlling. Attorney Stephen Eugster initiated suit against the Washington State Bar Association (WSBA), the association's director, and disciplinary counsel. The WSBA had previously brought a disciplinary proceeding against him and suspended his license to practice law. In his civil lawsuit, Eugster asserted that the discipline system violated his due process and First

Amendment rights under the United States Constitution.  We dismissed the lawsuit based on res judicata, despite the nucleus of facts before the WSBA administrative process not entailing facts relevant to Eugster's First Amendment and due process theories of recovery.  We also applied res judicata despite Eugster not enjoying the opportunity to garner damages for violation of his constitutional rights during the administrative process.  Res judicata barred Eugster's action because he could have and should have raised his challenges to the disciplinary process during the earlier WSBA proceeding against him.  In so ruling, this court cited numerous federal decisions that res judicata barred an attorney's suit for due process violations during a professional disciplinary proceeding because the attorney could raise the constitutional during the administrative process.  We reasoned that the policy against harassment by multiple suits applied with equal force when a party to an earlier administrative proceeding files an independent action to raise an issue that she could have raised in the administrative process.

Dion Blackburn claims she does not challenge the child support obligation imposed on her during either the 2016 or the 2018 administrative proceedings.  Nevertheless, Dion could have raised her constitutional and ADA challenges in the administrative hearings.  An administrative proceeding may be the same cause of action the first proceeding as a later suit challenging the process employed during the proceeding.  *Eugster v. Washington State Bar Association*, 198 Wn. App. 758, 791 (2017).

Dion Blackburn underscores that she could not have recovered damages for constitutional or ADA infringements during the child support process arrayed against her before the OAH. RCW 34.05.510. Nevertheless, the same would have been true for the attorney plaintiff in *Eugster v. Washington State Bar Association*, 198 Wn. App. 758, 791 (2017). This court in *Eugster* suggested that Stephen Eugster might have filed a later action for damages against the WSBA if he had prevailed in the disciplinary proceeding by showing a denial of his due process rights.

In *Vandenplas v. City of Muskego*, 753 F.2d 555 (7th Cir. 1985), the city obtained a state court order authorizing the razing of Lawrence Vandenplas' farm buildings. After the razing, Vandenplas sued the city and alleged that the destruction of his buildings resulted from his criticism of the city and thus breached his due process, equal protection, and First Amendment rights. The federal court summarily dismissed Vandenplas' suit on the basis of res judicata. Vandenplas could have raised his constitutional arguments as defenses in the state court action. Although the state court could not have awarded Vandenplas damages for the constitutional violations, if Vandenplas had prevailed on the constitutional issues, the city would have been precluded from razing the buildings and thereby Vandenplas would have averted damage. So too if Dion Blackburn had raised and prevailed on her due process and ADA claims before the ALJ, she would have averted the damage for which she now sues.

57

Unlike its sister doctrine, collateral estoppel, res judicata does not possess the element of fairness. *Malland v. Department of Retirement Systems*, 103 Wn.2d 484, 489, 694 P.2d 16 (1985); *Mendoza v. Expert Janitorial Services, LLC*, 11 Wn. App. 2d 32, 37, 450 P.3d 1220 (2019), *review denied*, 195 Wn.2d 1014, 461 P.3d 1198 (2020). Still, we would worry about working an injustice and would be hesitant to affirm dismissal of Dion Blackburn's suit if we deemed that Dion's disability prevented her from arguing, during the administrative hearing, that her disability precluded her from gainful employment or from asking the ALJ to review medical records. But she argued that she could not temporarily work and testified to her disability. She also conceded that she could have returned to work if not for the need to attend court hearings, not because of her disability. Dion filed a civil complaint, without the assistance of an attorney or an ADA coordinator, in superior court, wherein she asserted the same arguments. She was capable of filing records in the suit.

Dion Blackburn appealed the 2016 DCS order to the Thurston County Superior Court. As part of the appeal, she alleged that DSHS and OAH violated her ADA rights. Thus, she knew during the 2018 proceeding to assert those rights and in fact asked for some accommodations that OAH granted. Finally, during the 2018 administrative process, Dion ably filed public records requests with DSHS.

Dion Blackburn could have appealed the 2018 DCS order to the superior court. As part of the appeal, Dion could have presented evidence outside the record to support

her claimed need for assistance before the OAH. RCW 34.05.562. A petition for judicial review under Washington's administrative procedure act may allege the invalidity of an agency action because of the agency's erroneous interpretation or application of the law. RCW 34.05.570(3)(d).

Statute of Limitations

DSHS raises the statute of limitations as one reason for dismissal of that portion of the claims based on the 2016 administrative hearing. Because we dismiss all claims against DSHS, other than the PRA cause of action, on the basis of res judicata, quasi-judicial immunity or sovereign immunity, we do not address the statute of limitations.

Public Records Act

DSHS contends that the trial court properly dismissed Dion Blankburn's PRA claims as premature, but acquiesces that the trial court should not have dismissed those claims with prejudice. Dion's complaint only implicated an inadequate response to her second public records request originally submitted January 11, 2019. DSHS continued to produce records responsive to the January 11, 2019 request when Dion initially filed her complaint.

Denial of a requested record is a prerequisite for filing an action for judicial review of an agency decision under the PRA. *Hobbs v. State*, 183 Wn. App. 925, 936, 335 P.3d 1004 (2014); RCW 42.56.550(1). Only after an agency has taken final action, or inaction, indicating the nonproduction of responsive records will a PRA lawsuit lie.

*Hobbs v. State*, 183 Wn. App. 925, 936 (2014). DSHS took no final action while it continued to provide responsive records in installments.

CONCLUSION

After an interminable analysis, we affirm the superior court's dismissal of Dion Blackburn's claims for negligence, violations of the ADA, and denial of due process with prejudice. We remand to the superior court to dismiss Dion's PRA cause of action without prejudice, instead of with prejudice.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.